Theordore LUCAS, Plaintiff,

v.

**UNITED STATES of America, Defendant.**

Civ. A. No. 76–1745.

United States District Court, District of Columbia.

Sept. 30, 1977.

---

5. I assume, without deciding, that this finding will bear on the estate tax issues remaining.

Ruth R. Banks, Washington, D. C., for plaintiff.

Jordan A. Luke, Asst. U. S. Atty., Washington, D. C., for defendant.

MEMORANDUM OPINION

JUNE L. GREEN, District Judge.

Plaintiff brings this action for assault, battery, false arrest and personal injury under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.* He is seeking $50,000 in compensatory damages for loss of reputation, bodily injury and emotional distress.[1]

This matter is currently before the Court for a decision on the merits following a trial to the Court on September 20 and 21, 1977. Upon consideration of the testimony of all the witnesses; those portions of a deposition in evidence; exhibits, arguments of counsel; and the entire record herein, the Court makes the following:

*Findings of Fact*

1. On June 12, 1975, a group of individuals were standing trial in the Superior Court of the District of Columbia for the murder of Gail Cobb, the first female police officer killed in the line of duty in the United States. The trial was being held in Courtroom 11 on the second floor of Building A of the Superior Court, the special security courtroom, because defendants were reported to be part of a secret army of Black militants with political intentions, while Ms. Cobb's father was a law enforcement officer at Lorton Reformatory.

2. Very heavy security was in effect in and around the spectator-packed courtroom throughout the proceedings, including personal security for the judge, members of the jury, and the defendants. A security team of nearly thirty (30) deputy U. S. Marshals was assigned to the security detail.

3. The deputy marshals assigned to the security detail, including Deputy Marshals Jimmie L. Parker, Andrew Orenge, James Perry and Francis Phillips, were briefed prior to the commencement of the trial regarding the need for severe security measures required throughout the proceedings and the potential sources of security threats.

4. Late on the afternoon of June 12, 1975, presiding Judge Joyce H. Green adjourned formal proceedings for the day, cleared the courtroom, and instructed the team of deputy marshals to remain in the courtroom to allow the defendants and their attorneys to hold a group conference. (The defendants were housed in widely separated facilities outside the District of Columbia). The judge expressly instructed the deputy marshals to remain in attendance for purposes of security and to assure that discussions between the defendants and counsel remained absolutely confidential.

5. Shortly after the conference began, Deputy Marshal Francis Phillips observed a male figure outside the locked public doors at the side of the courtroom. Deputy Phillips indicated his observation to the other deputy marshals present and Deputy Marshal Jimmie L. Parker quickly left the courtroom.

6. Upon entering the hallway, Deputy Parker encountered a man later identified as Mr. Herman Washington seated alone near the doorway and asked him if he had been at the door. Mr. Washington indicated that he had not but that a man who had been there had just gone down the hall towards the elevators.

7. Deputy Parker proceeded towards the elevators, passing Deputy James Perry, who

---

1. Plaintiff initially sought $50,000 in punitive damages, attorney's fees and expungement of his arrest record as well. In the Court's view, these claims were in effect withdrawn by plaintiff as no mention was made of them either in the trial statement or during the course of the trial. To avoid any possible confusion, however, recovery of punitive damages and prejudgment interest from the United States is specifically prohibited by the Federal Tort Claims Act. 28 U.S.C. § 2674. Furthermore, 28 U.S.C. § 1346(b) limits the jurisdiction of the Court in Federal Tort Claims Act cases to claims for money damages. Thus, plaintiff's claim for expungement of his arrest record is beyond the Court's competence in this Federal Torts Claims Act action. Moreover, plaintiff did not make a claim for property damage at the administrative level and consequently is barred from doing so now. 28 U.S.C. § 2675. The Court need not address the issue of attorney's fees for reasons which will become obvious.

was assigned to the jury and who was coming from the vicinity of the elevators. Responding to Deputy Parker's question, Deputy Perry indicated that a man had just passed him. Deputy Parker hurried downstairs in Building A and began to search. He saw one man leaving the building, heading west toward 5th Street from the middle entrance of Building A. Deputy Perry, who had followed him, indicated that the man was the same person that he had seen in the upstairs hallway.

8. Deputy Parker hurriedly exited through the double doors of the middle entrance and called to the man. Simultaneously, he raised his badge and identification, which was contained in a black leather billfold, and identified himself as a deputy U. S. Marshal.

9. The man failed to stop when called, so Deputy Parker raised his voice to gain his attention, all the time exhibiting his credentials. The man turned and approached Deputy Parker, asking what Deputy Parker wanted. Deputy Parker explained that he believed the man had been on the second floor near Courtroom 11 and might have breached the security of the courtroom. Deputy Parker asked the man for identification and received a card that appeared to be an employment card from NASA.

10. Not recognizing the NASA card as a standard form of identification, Deputy Parker asked the man for his driver's license. The man became excited, belligerent and verbally abusive. He refused to cooperate with Deputy Parker and told Deputy Parker that he had all the identification he needed or was going to get. He then grabbed Deputy Parker's left arm near the hand that held the identification card, pulling Deputy Parker forward off the steps and causing him to lose his balance.

11. By this time, Deputy Andrew Orenge, who had also been in Courtroom 11 and who had followed Deputy Parker to the first floor to assist in investigating the possible breach of security, had joined the two outside the building. When Deputy Parker began to fall, Deputy Orenge stepped forward and steadied Deputy Parker. Deputy Parker then told the man, later identified as plaintiff Theodore Lucas, that he was placing him under arrest for assaulting, interfering with, and impeding a federal officer in the performance of his official duties. The Deputies then escorted plaintiff to the second floor of Building A near the vicinity of Courtroom 11.

12. Mr. Lucas became belligerent again on the second floor, threatening Deputy Parker with suit. Upon reaching the area in which Mr. Washington was seated, Deputy Parker asked Mr. Washington whether Mr. Lucas was the individual who had been looking in the door. Mr. Washington nodded in the affirmative.

13. As the three continued down the hallway, Mr. Lucas suddenly balked at proceeding any further. The Marshals stopped, frisked him, and cuffed his hands behind him.

14. Arriving at the end of the hallway, Deputy Parker left the other two and entered Courtroom 11 to retrieve his briefcase, find the necessary arrest forms, and report the incident to his superiors and the trial judge's deputy marshal. Deputy Orenge permitted Mr. Lucas to take a seat and remained nearby.

15. Shortly thereafter, Deputies Parker and Orenge took Mr. Lucas to the cellblock in the basement of Building A where they completed the arrest forms. Mr. Lucas asked Deputy Orenge, who, according to Mr. Lucas' own testimony had been polite throughout the entire incident, to intercede on his behalf with Deputy Parker to get the charges dropped. Deputy Parker responded that only a magistrate or judge could dismiss the charges.

16. Mr. Lucas was transported to the Central Cellblock in the Municipal Building without further incident. Following mandatory standard procedures Mr. Lucas was placed in the custody of the Metropolitan Police Department for processing pending his appearance before a U. S. Magistrate the following day.

17. Mr. Lucas was not harmed during his overnight detention. The next day, the United States Attorney's Office chose not to proceed with criminal prosecution and Mr. Lucas was released from custody.

18. Mr. Lucas did not suffer any physical injuries as a result of this incident. Nor did he incur any medical expenses. His reputation in the community has not been affected other than by and through his or his family's communication of the incident to other persons.

19. Mr. Lucas had exhausted all of his administrative remedies prior to filing this action.

Based thereon, the Court makes the following:

## Conclusions of Law

1. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1346(b) and 28 U.S.C. § 2671 *et seq.* (The Federal Torts Claims Act). None of the deputy marshals has been sued individually in this action, for either common law or constitutional torts.

■ 2. The United States is liable under the Federal Tort Claims Act for included tort claims only "in the same manner and to the same extent as a private individual under like circumstances" would be. 28 U.S.C. § 2674. The Act explicitly provides that the Government's liability shall be determined "in accordance with the law of the place where the [wrongful] act or omission occurred." 28 U.S.C. §§ 1346(b), 2672. That is, although federal law and the Federal Rules of Civil Procedure control the procedural aspects of a Federal Tort Claims Act suit, state or local law controls the disposition of all substantive tort aspects of the cause, including, *inter alia*, the issues of scope of employment, *respondeat superior*, and damages. *See e. g., Richards v. United States*, 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962); Jayson, *Handling Federal Tort Claims* §§ 218, 201.

2. The officer need not prove probable cause in the constitutional sense, but need only show a good faith and reasonable belief that probable

■ 3. 28 U.S.C. § 2680(h) includes within the coverage of the Federal Tort Claims Act claims "arising out of assault, battery, false imprisonment, false arrest" resulting from the acts or omission of "law enforcement officers of the United States Government." Deputy U. S. Marshals are "law enforcement officers of the United States Government" within the meaning of § 2680(h). Moreover, simple assault is a misdemeanor in the District of Columbia, 22 D.C.Code § 504, and Deputy Parker, as a "law enforcement officer" within the meaning of 23 D.C.Code § 501(2), was authorized to arrest Mr. Lucas, without a warrant, for the commission of the misdemeanor in his presence. 23 D.C.Code § 581(a)(1)(B); 18 U.S.C. § 3053.

4. At all times pertinent hereto, the aforementioned deputy United States Marshals were acting within the scope of their office or employment within the meaning of the Act, and in pursuit of their official duties as deputy United States Marshals. *See e. g., Cruikshank v. United States*, 431 F.Supp. 1355, 1356–1358 (D.Hawaii 1977).

■ 5. Under the common law of the District of Columbia, probable cause to effectuate an arrest is a defense to a law enforcement officer for the torts of assault, battery, and false arrest.[2] A defense available to an individual law enforcement officer for the torts of false arrest, assault, and battery is also available to his employer sued under a *respondeat superior* theory for acts occurring during the scope of the officer's employment. *Wade v. District of Columbia, supra,* n.2, 310 A.2d at 862.

■ 6. Deputy Parker was legally justified in stopping and detaining plaintiff on the steps of Building A for questioning regarding a possible breach of security at Courtroom 11. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 899 (1968). His request for a driver's license was a reasonable effort to obtain trustworthy identification from plaintiff.

cause existed. *Wade v. District of Columbia*, 310 A.2d 857 (D.C.Ct.App.1973).

7. Thereafter, once plaintiff forcibly grabbed Deputy Parker, Deputy Parker had probable cause to arrest plaintiff for assaulting . . . and interfering with a federal officer in the performance of his official duties in violation of 18 U.S.C. § 111. In conjunction with 18 U.S.C. § 1114, section 111 includes deputy United States Marshals as protected federal officers. Section 111 does not require that the federal officer be placed in fear, or that bodily injury be inflicted, *United States v. Frizzi*, 491 F.2d 1231 (1st Cir. 1974), and it is of course not relevant that the prosecuting officials determine not to prosecute in the absence of bodily injury. The section includes the lifting of a menacing hand toward the officer, or shoving him, *United States v. Alsondo*, 486 F.2d 1339 (2nd Cir. 1973), *rev'd. on other grounds*, 420 U.S. 671, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975), or spitting in his face, *United States v. Frizzi, supra*, 491 F.2d at 1232.

8. Plaintiff's arrest was predicated solely on his interference with, and assault on, the officer, and the Deputies' actions thereafter were consistent with that purpose. The arrest was not pretextual or made to harass plaintiff; rather, it resulted from the conduct of plaintiff in physically assaulting a deputy marshal during the course of an official inquiry regarding a potential breach in the security of a tightly secured trial.

9. Based on his efforts to identify himself and his purpose, Deputy Parker had probable cause to believe that Mr. Lucas knew that Deputy Parker was a deputy U. S. Marshal engaged in the discharge of his official duties. It is not necessary that the person charged under 18 U.S.C. § 111 be certain that his victim is a federal officer. *United States v. Irick*, 497 F.2d 1369 (5th Cir. 1974); *United States v. Fernandez*, 497 F.2d 730 (9th Cir. 1974). It is not even necessary that the person have been shown the officer's badge or credentials, and his or her oral declaration may be sufficient to sustain a criminal conviction. *Carter v. United States*, 231 F.2d 232 (5th Cir. 1956), *cert. denied*, 351 U.S. 984, 76 S.Ct. 1052, 100

L.Ed. 1498 (1956). Even by plaintiff's own testimony, he was aware that Deputy Parker was a court employee investigating a possible contempt of court.

10. Since the common law of the District of Columbia provides that the defenses of the arresting officer in suits of this nature are available to the principal sued under a *respondeat superior* theory, and the arresting officer here would not be liable under the common law of the District of Columbia, the United States is not liable in this action.

Accordingly, judgment is entered for defendants and this case is dismissed.