**Dwayne D. RICHARDSON, Plaintiff,**

v.

**U.S. DEPARTMENT OF INTERIOR, et al., Defendants.**

**Civ. A. No. 89–1158.**

United States District Court, District of Columbia.

June 12, 1990.

Amy R. Goldson, Washington, D.C., for plaintiff.

Mark E. Nagle, Asst. U.S. Atty., Washington, D.C., for defendants.

## MEMORANDUM OPINION

SPORKIN, District Judge.

This matter is before the Court on defendants' motion to dismiss, or in the alternative, for summary judgment. After reviewing defendants' motion, the plaintiff's response thereto, and after having heard oral argument from the parties, this Court is prepared to rule on the motion.

## I. BACKGROUND

This action stems from events which took place on the night of May 7, 1988, at East Potomac Park, which is under the jurisdiction of the National Park Service, an agency of the United States Department of the Interior. The parties are in agreement as to most of the essential facts. Plaintiff had gone to the park with friends to play miniature golf. Plaintiff left the golf course area to use the men's room located near the parking area. Plaintiff states that he walked through an open gate into a parking area and through a second open gate into the rest rooms.[1] Officer DeLullo, of the United States Park Police observed the plaintiff walking in this area and locked the gate while the plaintiff was in the rest room. After leaving the rest room, plaintiff sought to return to the golf course area via the route he had just used. However, plaintiff found the gate locked. It is uncontested that Officer DeLullo then instructed the plaintiff that the area was restricted and he should not re-enter.[2]

Notwithstanding this instruction, the plaintiff proceeded to climb over the fence near the locked gate.[3] Upon observing the plaintiff climb over the fence, Officer De-Lullo returned to the area near the fence and advised the plaintiff that he was under arrest for trespassing.[4] Plaintiff was placed in handcuffs.

Officer DeLullo proceeded to escort the plaintiff to the park police station. While they were walking, Officer DeLullo contends that the plaintiff attempted to "wrench away" and said "I'm leaving." As Officer DeLullo attempted to regain his grasp on the plaintiff's arm, he lost his balance. This resulted in both Officer De-Lullo and the plaintiff falling into a parked golf cart.

After regaining their footing, the plaintiff and officer DeLullo proceeded into the station where plaintiff was photographed and fingerprinted. Plaintiff was charged with trespassing and disorderly conduct. Plaintiff at the time had no identification which reflected that he lived or worked within 50 miles of the District of Columbia. Without such information, D.C. Office of Pre-trial Services Guidelines preclude the release on a summons of an arrestee. Plaintiff was placed in a holding cell until he was turned over to the District of Columbia's Metropolitan Police.[5] Officer De-Lullo asserts that he made every effort to verify the residence and employment information that the plaintiff had apparently orally communicated. These efforts were unsuccessful.

After being transferred to the custody of the Metropolitan Police, plaintiff was taken to the Central Cell Block where he remained incarcerated until midnight. At that time, his girlfriend returned with the necessary funds to post bond. Plaintiff appeared with counsel at a scheduled court date at which time he was advised that "no charges" would be filed against him. Pl. Opp. at 3.

## II. THE APPLICABLE LEGAL STANDARDS

When presented with a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and its allegations must be taken as true. Moreover, any ambiguities or uncertainties

---

1. The defendants submit that the parking area is restricted and that signs are posted which inform the public not to venture into that area. Although plaintiff disputes this assertion, it is not necessary to resolve this factual dispute to decide this case.

2. Plaintiff asserts that Officer DeLullo simply yelled to him, "get out of there." Plaintiff has also submitted the affidavit of Ms. Sharon Brown. Ms. Brown states that the officer simply told the plaintiff that he would have to "go around."

3. Plaintiff concedes in his opposition papers that he did not realize that "he could get out by simply walking around the other side of the men's room." Pl. Opp. at 2.

4. Plaintiff in his affidavit asserts that DeLullo stated, "I told you to get your black a__ out of there."

5. Plaintiff contends that while he was being held Officer DeLullo constantly taunted him by placing him in and out of the holding cell at half-hour intervals. Plaintiff also asserts that the officer repeatedly asked him, "Did you learn your lesson?".

concerning the sufficiency of the claims must be resolved in favor of the plaintiff. *See Hughes v. Rowe*, 449 U.S. 5, 10, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1979); *see also* 5 Wright & Miller, Federal Practice and Procedure § 1357 (1969). As the Supreme Court has stated:

> In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

**6.** Both plaintiff and defendant have filed affidavits and other documentary exhibits with the Court. To the extent that this Court relies on these additional filings in making its determination, defendant's motion will be treated as one for summary judgment. *See* Fed.R.Civ.P. 12(b)(6) & 56. Rule 56 provides, "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In reviewing a motion for summary judgment, the court must consider the pleadings, related documents, and evidence in a light most favorable to the non-moving party. *Adickes v. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Moreover, a factual dispute does not preclude summary judgment unless, the disputed fact is outcome determinative under the governing law. "It is thus axiomatic that even in the face of some factual disputes, 'where the *undisputed facts* demonstrate that one party is entitled to judgment as a matter of law, summary judgment in favor of that party is entirely appropriate.'" *Egger v. Phillips*, 710 F.2d 292, 296–97 (7th Cir.), *cert. denied*, 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983) (citations omitted) (original emphasis).

**7.** Plaintiff in his jurisdictional statement asserts that 42 U.S.C. § 1985 also provides a basis for federal jurisdiction. However, no where else in the complaint does plaintiff rely on Section 1985. Section 1985(3) provides:

*Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)(footnote omitted). Thus, at this stage, plaintiff's statement of the facts must be accepted as true.

Defendants contend that various counts of plaintiff's complaint must be dismissed for failure to state a claim úpon which relief can be granted. Fed.R.Civ.P. 12(b)(6).[6]

## III. PLAINTIFF'S LEGAL CLAIMS

Plaintiff alleges· in Count I of his complaint that the actions taken by Officer DeLullo constitute a violation of 42 U.S.C. § 1983.[7] Section 1983 provides:

> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; ... [and] in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of·such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3) (1981). The Court of Appeals has held that in order to state a claim under this provision a plaintiff must allege: "1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, ... and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Hobson v. Wilson*, 737 F.2d 1, 14 (D.C.Cir.1984), *cert. denied sub nom, Brennan v. Hobson*, 470 U.S. 1084, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985). In addition, a plaintiff must allege that the tortious actions were the product of a class-based discriminatory animus. *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971).

Here, plaintiff has failed to plead any facts that allege the existence of a conspiracy to deny him of any of his rights as a citizen. Accordingly, to the extent that plaintiff bases this action on 42 U.S.C.' § 1985 it is dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a ·claim.

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983 (1981). Here, plaintiff contends that Officer DeLullo was acting under the color of District of Columbia law when he arrested the plaintiff.[8] Plaintiff's legal analysis is incorrect.

Plaintiff concedes that Officer DeLullo, as a United States Park Police Officer, is a federal official. In addition, the incident that provides the basis for this action took place on federal lands, specifically a National Park. Thus, this case involves an incident where a federal officer's actions occurred on federal property. Although Officer DeLullo may have relied on District of Columbia criminal provisions when he arrested the plaintiff, the Assimilative Crimes Act ("Act"), 18 U.S.C. § 13,[9] serves to transform District of Columbia law into federal law. This Act essentially provides that if there is no federal law governing certain behavior, state or territorial law is to be applied as federal law on federal property located in those states or territo-

ries. This would include federal property within the District of Columbia.

Officer DeLullo's arrest of the plaintiff was clearly made under the color of federal law, and not District of Columbia law. *See Townsend v. Carmel*, 494 F.Supp. 30, 32 (D.D.C.1979). As the Supreme Court stated in *District of Columbia v. Carter*, 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973), Section 1983 "deals only with those deprivations of rights that are accomplished under the color of the law of 'any State or Territory'." *Id.* at 424, 93 S.Ct. at 606 (footnote admitted). Actions taken by federal officers are outside its proscriptions. *McCord v. Bailey*, 636 F.2d 606, 613 (D.C.Cir.1980), *cert. denied*, 451 U.S. 983, 101 S.Ct. 2314, 68 L.Ed.2d 839 (1981) (citations omitted). Accordingly, plaintiff's claim under 42 U.S.C. § 1983 must be dismissed as a matter of law for failure to state a claim.

Plaintiff also asserts that the actions taken by Officer DeLullo rose to the level of a constitutional tort. *See Bivens v. Six Unknown Named Agents of the Bureau of Narcotics and Dangerous Drugs*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Specifically, plaintiff alleges that his rights under the Fourth, Sixth, and Ninth Amendments to the United States Constitution were violated. Additionally, in Counts II and III of his complaint, plaintiff claims that the actions of Officer DeLullo constitute the common law torts of false arrest and imprisonment, and assault and battery.[10] Plaintiff is seeking both compensatory and punitive damages.

---

**8.** Although plaintiff does not specifically allege which District of Columbia statutory provisions Officer DeLullo relied upon, plaintiff in his response to defendants' motion to dismiss or for summary judgment does set out the District of Columbia provision for disorderly conduct.

**9.** The Act provides in relevant part:
Whoever within or upon any of the places now existing or hereafter reserved or acquired [by the federal government] ..., is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in

force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.
18 U.S.C. § 13(a) (1990).

**10.** Regarding these common law tort claims, the Federal Tort Claims Act (FTCA) creates a cause of action against the United States for certain tortious actions of federal officials and employees. 28 U.S.C. § 2674. The FTCA also provides that when an federal officer is sued in his individual capacity, the United States upon certification by the Attorney General that the officer or employee was acting within the scope of his/her official duties, is to be substituted as the exclusive party defendant. 28 U.S.C. § 2679(d). The Chief of the Civil Division of the Office of

The Court now turns its attention to the substance of plaintiff's constitutional and common law tort claims.

## IV. CONSTITUTIONAL TORT CLAIMS

■ Plaintiff alleges that the actions of Officer DeLullo violated his Fourth, Sixth, and Ninth Amendments rights.[11] Defendants assert two bases for dismissal or summary judgment as to these claims: 1) failure to state a claim; and 2) official immunity.

■ The Sixth Amendment to the Constitution provides:

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, ... and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.

U.S. Const. amend. VI. Plaintiff has not even seen fit to specifically set out in his complaint the facts that he alleges support a claim that his Sixth Amendment rights were violated. Moreover, plaintiff simply makes a broad reference to the Sixth Amendment in the Jurisdictional section of his Complaint. The only conceivable Sixth Amendment claim is that Officer DeLullo failed to inform the plaintiff of the "nature and cause of the accusation" for which he was arrested.[12] However, the Court of Appeals has held that a four hour delay between the time of arrest and the time of advisement as to the nature of the charges does not constitute a violation of an accused's Sixth Amendment rights. *Martin v. Malhoyt,* 830 F.2d 237, 260–61 (D.C.Cir. 1987). Given this decision and the inadequacy of plaintiff's pleading, this Court finds that plaintiff's Sixth Amendment claim must be dismissed for failure to state a claim.

■ Similarly, plaintiff's claim that his Ninth Amendment Rights were violated must also be dismissed. The Ninth Amendment provides:

The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people.

U.S. Const. amend. IX. Simply stated, the Ninth Amendment makes it clear that the rights enumerated in the Constitution are not to be considered exclusive. Plaintiff, however, has failed to in any way articulate what rights beyond those expressly enumerated in the Constitution have been violated. Accordingly, plaintiff's Ninth Amendment claim must be dismissed.

Plaintiff's Fourth Amendment claim stands on an entirely different footing. Plaintiff alleges that he was arrested by Officer DeLullo without probable cause, that he was subjected to an unreasonable and excessive use of force, and that he was subjected to an unreasonable and unlawful search. In response to these allegations, defendant DeLullo raises the doctrine of qualified immunity.

## V. QUALIFIED IMMUNITY

This Court is quite aware that a Motion to Dismiss or for Summary Judgment

---

the United States Attorney for the District of Columbia being duly authorized has certified that Officer DeLullo was acting within the scope of his employment at the time of the alleged tortious actions at issue in this case. The plaintiff concedes that this certification operates to substitute the United States as the defendant to the common law tort claims. *See* Plaintiff's Opp. to Motion to Dismiss and Motion for Summary Judgment at 5–6 n. 1. Furthermore, plaintiff apparently concedes that his common law tort claims cannot be maintained against the Department of Interior, National Park Service, and the United States Park Police. The only appropriate defendant is the United States. *See* 28 U.S.C. § 2679(a).

11. In his complaint plaintiff also refers to the Fourteenth Amendment. Such a claim, however, is untenable since the Fourteenth Amendment simply addresses itself to state action. As noted above, Officer DeLullo is being sued in his individual capacity and any reliance on the Fourteenth Amendment as basis for a cause of action against a private actor is unavailing.

12. In paragraph 13 of his complaint, plaintiff alleges that he was placed in a jail cell for several hours during which time he was not advised of his constitutional rights nor brought before a magistrate.

seeks to summarily extinguish litigation and to foreclose the opportunity for discovery and factual presentations. Such a motion should be granted "only when it appears beyond doubt that, under any reasonable reading of the complaint, the plaintiff will be unable to prove any set of facts that would justify relief." *Haynesworth v. Miller*, 820 F.2d 1245, 1254 (D.C.Cir.1987).

In particular, the D.C. Circuit has recognized that the spectre of a qualified immunity defense places special burdens on the complaint at the pleading stage. *Haynesworth*, 820 F.2d at 1254 n. 71. Consequently, an inquiry into the existence, nature, and applicability of an immunity defense in this case must be undertaken to ascertain the ability of plaintiff's complaint to withstand defendants' motions.

■■■ In general, there are two types of immunity that shield the actions of federal government officials—absolute and qualified. The doctrine of absolute immunity shields officials from being held liable for common law tort claims when the tortious actions alleged to have been taken occurred within the outer perimeter of an official's duties and were discretionary in nature. *Westfall v. Erwin*, 484 U.S. 292, 108 S.Ct. 580, 585, 98 L.Ed.2d 619 (1988). Qualified immunity insulates officials from personal liability when their alleged tortious conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have been aware or when the alleged improper conduct was not the product of an unconstitutional motive or bad faith. *See e.g. Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Smith v. Nixon*, 807 F.2d 197, 199–200 (D.C.Cir.1986). The underlying public policy for immunizing official action "is not to protect an erring official, but to insulate the decisionmaking process from the harassment of prospective litigation. The provision of immunity rests on the view that the threat of liability will make federal officials unduly timid in carrying out their official duties, and that effective Government will be promoted if officials are freed of the costs of vexatious and often frivolous damages suits." *West-*

*fall*, 108 S.Ct. at 583 (absolute immunity relating to common law torts); *see also Harlow*, 457 U.S. at 814, 102 S.Ct. at 2736 (discussing reasons for qualified immunity).

The entire official immunity doctrine is directed at reconciling two important and conflicting considerations:

> [O]n the one hand, the protection of the individual citizen against pecuniary damage caused by oppressive or malicious action on the part of officials of the Federal Government; and on the other, the protection of the public interest by shielding governmental officers against the harassment and inevitable hazards of vindictive or ill-founded damage suits brought on account of action taken in the exercise of their official responsibilities.

*Barr v. Matteo*, 360 U.S. 564, 565, 79 S.Ct. 1335, 1336, 3 L.Ed.2d 1434 (1959) (absolute immunity for common law torts). The Supreme Court has clearly recognized that application of the official immunity doctrine carries with it a great cost; not only are injured parties denied compensation, but the doctrine also enables the responsible individuals to avoid being held accountable. *Westfall*, 108 S.Ct. at 583. These costs must be balanced against the costs of allowing individuals to seek relief against governmental officials. As the *Harlow* Court noted, "it cannot be disputed seriously that claims frequently run against the innocent as well as the guilty— at a cost not only to the defendant officials, but to society as a whole. These social costs include the expenses of litigation, the diversion of official energy from pressing public issues, and the deterrence of able citizens from acceptance of public office." *Harlow*, 457 U.S. at 814, 102 S.Ct. at 2736 (footnote omitted).

■■■ Plaintiff in his complaint asserts that the conduct of Officer DeLullo violated his constitutional rights and amounted to a constitutional tort. Where a tort action alleges violations of constitutional rights, the doctrine of absolute immunity is not applicable. *Butz v. Economou*, 438 U.S. 478, 495, 98 S.Ct. 2894, 2905, 57 L.Ed.2d 895 (1978). However, the *Butz*

Court also recognized that public policy considerations require that some limitation must be placed on the potential liability of federal executive officials. *Id.* at 506, 98 S.Ct. at 2910. The Court held that where constitutional violations are at issue officials will generally enjoy qualified immunity. *Id.* at 507, 98 S.Ct. at 2911.

In *Harlow v. Fitzgerald, supra,* the Supreme Court enunciated the proper standard for evaluating an assertion of qualified immunity. The *Harlow* Court adopted an objective test to determine whether the doctrine of qualified immunity applies.[13] In formulating this test, the Court placed great emphasis upon the need for maintaining a proper accommodation between the competing values of individual rights and the social costs of exposing officials to suit. The Court was particularly concerned that exposing officials to personal liability would inhibit officials from aggressively discharging their duties. *Id.*

With these concerns in mind, the Court held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate *clearly established* statutory or constitutional rights of which a reasonable person would have known." *Id.* 457 U.S. at 818, 102 S.Ct. at 2738 (emphasis added). The Court of Appeals for this Circuit has held, however, that the Supreme Court did not intend to entirely preclude inquiry into a defendant's "subjective" motivation. In *Martin v. D.C. Metro. Police Dep't,* 812 F.2d 1425, *modified,* 817 F.2d 144 (D.C.Cir. 1987), for instance, the Court of Appeals concluded that application of a *purely* objective standard of inquiry is inadequate. The *Martin* Court held:

> when the governing precedent identifies the defendant's intent (unrelated to knowledge of the law) as an essential element of plaintiff's constitutional claim, the plaintiff must be afforded an opportunity to overcome an asserted im-

munity with an offer of proof of the defendant's alleged unconstitutional purpose.

*Id.* 812 F.2d at 1433 (citation omitted). The Court of Appeals emphasized that such a limited inquiry into defendant's subjective intent is warranted only in instances where the controlling substantive law makes the official's state of mind an essential element of plaintiff's constitutional claim. *Id.* n. 18. This Circuit recently summarized the governing standard:

> Inquiry into subjective intent unrelated to knowledge of the law is permissible where the constitutional violation turns on an unconstitutional motive. Nonetheless, under this court's heightened pleading standard, in order to obtain even limited discovery, such intent must be pleaded with specific, discernible facts or offers of proof that constitute direct as opposed to merely circumstantial evidence of the intent.

*Siegert v. Gilley,* 895 F.2d 797, 802 (D.C. Cir.1990).

Thus, the proper resolution of defendants' assertion of immunity turns on the nature of plaintiff's claim. If it is plaintiff's contention that the actions taken by Officer DeLullo were objectively unlawful, he must plead that the rights he alleges to have been violated were "clearly established" at the time of the alleged improper conduct. *Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985). If the alleged constitutional violation turns on some element of subjective intent, then plaintiff must satisfy the heightened pleading standard adopted by this Circuit. *See Siegert, supra.*

A liberal reading of the complaint leads this Court to conclude that plaintiff's Fourth Amendment claim involves both subjective and objective elements. This Court, however, has determined that plaintiff's allegations fail to defeat Officer DeLullo's assertion of qualified immunity.

---

**13.** Prior to *Harlow,* a determination as to the validity of a defendant's assertion of qualified immunity required an analysis of both subjective and objective elements. *See e.g. Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d

214 (1975). The *Harlow* Court, noting that the existing standard was not adequately shielding federal officials from suit and its accompanying burdens, set out to fashion a test that focused primarily on "objective" factors.

### A. Violations of "Clearly Established" Right

In *Harlow*, the Supreme Court held that to overcome an assertion of qualified immunity the constitutional rights alleged by plaintiff to have been violated must have been "clearly established" at the time of the alleged wrongdoing. The Court has subsequently recognized that the application of this standard depends substantially upon the level of generality at which the relevant "legal rule" is identified. *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

 Here, plaintiff asserts causes of action that are deemed to have their bases in the Fourth Amendment. Plaintiff is correct that an arrest without probable cause constitutes a violation of the Fourth Amendment. *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). Where an alleged Fourth Amendment violation is at issue, however, an arresting officer is entitled to immunity if he acted in good faith and with probable cause. As the Supreme Court has stated, "It is the existence of reasonable grounds for the belief formed at the time and in light of all the circumstances, coupled with good-faith belief, that affords a basis for qualified immunity...." *Scheuer v. Rhodes*, 416 U.S. 232, 247–48, 94 S.Ct. 1683, 1692, 40 L.Ed.2d 90 (1974). *Scheuer* stands for the principle that police officers are entitled to a defense of "good faith and probable cause," even though an arrest might subsequently be proven to have been unconstitutional. *Butz*, 438 U.S. at 496, 98 S.Ct. at 2905.[14] This Court concludes that given the undisputed facts in this matter Officer DeLullo clearly had an honest belief that the plaintiff had violated the law, and that this belief was reasonable in light of the facts available to him at the scene of the arrest. *Scheuer*, 416 U.S. at 246–48, 94 S.Ct. at 1691–92; *see also Dellums v. Powell*, 566 F.2d 167, 177 (D.C.Cir.1977), *cert. denied*, 438 U.S. 916, 98 S.Ct. 3146, 57

L.Ed.2d 1161 (1978). Officer DeLullo observed the plaintiff walk through the restricted parking area. After seeing the plaintiff head toward the rest rooms, Officer DeLullo locked the gate that surrounded the restricted parking area. When he saw the plaintiff exit the mens room and walk toward the now locked gate, Officer DeLullo returned to the gate area and instructed the plaintiff that it was a restricted area and that he would have to "go around." *See* Affidavit of Sharon Brown, ¶ 4; Affidavit of Officer DeLullo, ¶ 4. Rather than complying with the request of the Officer, plaintiff simply disregarded the instruction and jumped the fence that surrounded the restricted parking area. Affidavit of Sharon Brown, ¶ 5. It was only after the plaintiff intentionally disregarded the instructions of the Officer that he was arrested for trespassing. Thus, it is clear to the Court that Officer DeLullo possessed the requisite probable cause to arrest. This being the case it cannot be said that "in light of preexisting law the unlawfulness" of plaintiff's arrest was "apparent." *Anderson*, 483 U.S. at 640, 107 S.Ct. at 3039. Moreover, the actions taken by Officer DeLullo subsequent to plaintiff's formal arrest were in compliance with established procedures. Specifically, the decision not to release the plaintiff on a summons to appear was in accordance with District of Columbia administrative guidelines.

 Plaintiff also contends that while being arrested he was subjected to the exercise of unreasonable force by the defendant DeLullo. In evaluating this aspect of plaintiff's Fourth Amendment claim, this Court is guided by the decision of the Supreme Court in *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). *See Martin v. Malhoyt, supra. Garner* stands for the proposition that the use of force by the police in effecting an arrest must meet an objective standard of reason-

---

**14.** Although *Scheuer* involved a Section 1983 claim against state officials, the Supreme Court in *Butz* unequivocally declared, "we deem it untenable to draw a distinction for purposes of immunity law between suits brought against state officials under § 1983 and suits brought directly under the Constitution against federal officials." *Butz*, 438 U.S. at 504, 98 S.Ct. at 2909.

ableness. To evaluate reasonableness, the Court adopted a test that calls for balancing the infringement of the individual's interest caused by the police action against the governmental interest served by the police action. *Malhoyt*, 830 F.2d at 261. (citations omitted). As the *Malhoyt* court declared: "This balancing test is both objective and fact-sensitive; it looks to the 'totality of the circumstances' known to the officer at the time of the challenged conduct, and it accords a measure of respect to the officer's judgment about the quantum of force called for in a quickly developing situation." *Id.* (footnote omitted). Moreover, malice, if any, is not to be taken into account when applying this reasonableness standard. *Garner*, 471 U.S. at 7–9, 105 S.Ct. at 1699–1700.

According to plaintiff, Officer DeLullo slammed him into a golf cart and pushed him to the ground. Affidavits of Sharon Brown, ¶ 7; Richardson, ¶ 8. Officer De-Lullo acknowledges that the plaintiff did in fact fall into the golf cart. However, De-Lullo avers that this incident occurred as a result of his losing his footing and falling down while walking the plaintiff to Park Police Station. Affidavit of DeLullo, ¶¶ 11–12. DeLullo further avers that he lost his balance only when the plaintiff attempted to "wrench away" and said "I'm leaving." *Id.* Plaintiff in his affidavits does not directly dispute Officer DeLullo's statement of events.

Given this record and the relevant legal standard, this Court concludes that the actions of Officer DeLullo were not objectively unreasonable. *See Malhoyt*, 830 F.2d at 262. (slamming of car door on legs of arrestee held not to be objectively unreasonable).

▮ Finally, plaintiff asserts that he was subjected to an unreasonable search. Having determined that Officer DeLullo had probable cause to arrest the plaintiff, a search incident to that arrest would have been lawful. *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). Plaintiff has not alleged any specific facts that lead this Court to conclude that the search of plaintiff was conducted in an improper manner.

The *Anderson* Court expressed concern about the ability of plaintiffs to transform the rule of qualified immunity "into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Anderson*, 483 U.S. at 639, 107 S.Ct. at 3039. The Court reasoned, "Such an approach, in sum, would destroy 'the balance that our cases strike between the interests in vindication of citizens' constitutional rights and in public officials' effective performance of their duties,' by making it impossible for officials 'reasonably [to] anticipate when their conduct may give rise to liability for damages.' " *Id.* (quoting *Davis v. Scherer*, 468 U.S. 183, 195, 104 S.Ct. 3012, 3019, 82 L.Ed.2d 139 (1985)) (footnote omitted). The Court declared that, "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of preexisting law the unlawfulness must be apparent." *Id.* 483 U.S. at 640, 107 S.Ct. at 3039. (citations omitted).

The crucial question therefore becomes whether the actions that plaintiff alleges Officer DeLullo to have taken are actions that a reasonable official could have believed to be lawful. *Id.* at 646 n. 6, 107 S.Ct. at 3042 n. 6. This Court is convinced that Officer DeLullo could have reasonably believed that his conduct was lawful.

B. *Allegations of Unconstitutional Motive*

▮ To the extent plaintiff alleges that defendant DeLullo was motivated by malice, this Court must also reject plaintiff's argument. This Court concludes that plaintiff's allegations of unconstitutional motive fail to satisfy this Circuit's heightened pleading standard. *See Smith v. Nixon*, 807 F.2d 197, 200 (D.C.Cir.1986); *Hobson v. Wilson*, 737 F.2d at 29–30.

With its recent decisions in this area, the Court of Appeals has elaborated on the demanding nature of the heightened pleading standard. The Court of Appeals has erected such a demanding pleading standard so "that bare allegations of improper purpose, like the bare allegations of malice rejected in *Harlow*, do not suffice to drag officials into the mire of discovery." *Smith v. Nixon*, 807 F.2d at 200. As the Court of Appeals has declared: "[T]o avert dismissal short of trial, [the plaintiff] must come forward with something more than inferential or circumstantial support for his allegation of unconstitutional motive. That is some *direct evidence* that the officials' actions were improperly motivated must be produced if the case is to proceed to trial." *Martin v. D.C. Metro. Police*, 812 F.2d at 1435. (emphasis added) (citation omitted).

Plaintiff has failed to meet this heavy burden. Such naked conclusory allegations cannot provide the basis for subjecting government officials to the burdens of discovery or trial. *Siegert*, 895 F.2d at 803–804. (citation omitted). Since plaintiff has failed to allege any direct evidence of unconstitutional intent, "his claim must be dismissed immediately." *Whitacre v. Davey*, 890 F.2d 1168, 1171 n. 4 (D.C.Cir.1989).

## VI. COMMON LAW TORTS

Plaintiff also asserts common law tort claims against the defendant Officer De-Lullo and various agencies. However, as discussed in footnote 10 above, pursuant to the Federal Tort Claims Act the only proper defendant is the United States. The Court now directs its attention to the merits of these common law claims.

■■■ First, in Count II of his complaint, plaintiff alleges that Officer DeLullo committed the intentional common law torts of assault and battery. An individual is subject to liability for assault if 1) he acts intending to cause a harmful or offensive contact with the person of the other . . . , or an imminent apprehension of such a contact; and 2) the other is thereby put in such

imminent apprehension. Restatement of Torts (Second) § 21 (1965). An individual is subject to liability for battery if the conditions outlined in (1) above are met and an offensive contact with the person of the other directly or indirectly results. *Id.* at § 18. Plaintiff has adequately pleaded the elements of assault and battery. Nevertheless, plaintiff's claim must fail because the alleged assault and battery occurred during the effectuation of an arrest. The existence of probable cause to arrest is a defense to a claim for assault and battery in connection with an arrest as long as the force used in making the arrest was reasonable. *Wilcox v. United States*, 509 F.Supp. 381, 386 (D.D.C.1981), citing *Wade v. District of Columbia*, 310 A.2d 857 (D.C. 1973). In light of the entire record in this case, this Court concludes that Officer De-Lullo did not use unreasonable force when arresting the plaintiff. Accordingly, summary judgment is appropriate as to Count II of plaintiff's complaint.

■■■ In Count III of his complaint, plaintiff alleges the common law torts of false arrest and false imprisonment. An actor is liable for false imprisonment if 1) he acts intending to confine the other . . . within boundaries fixed by the actor; 2) his act directly or indirectly results in such a confinement of the other; and 3) the other is conscious of the confinement or is harmed by it. Restatement of Torts (Second) § 35 (1965). To establish that he was a victim of a false arrest, the plaintiff must allege that he was arrested and imprisoned without process. *Dellums v. Powell*, 566 F.2d at 175. (citations omitted). Once such an allegation is made the burden then shifts to the arresting officer to show that his actions were justified. *Id., see also Wilcox*, 509 F.Supp. at 384. Justification can be established by showing that the officer possessed the requisite probable cause to arrest the plaintiff on the grounds charged. *Dellums*, 566 F.2d at 175.[15] Alternatively, justification exists if the arresting officer had reasonable grounds to believe a crime had been committed and that the arrest was made for the purpose of

---

**15.** The standards that apply in evaluating a *Bivens* action based on an alleged improper arrest in violation of the Fourth Amendment also ap-

ply when the claims being advanced are the common law torts of false arrest and false imprisonment. *Dellums v. Powell*, 566 F.2d at 175.

securing the administration of the law. *Id., see also Lucas v. United States*, 443 F.Supp. 539, 543 (D.D.C.1977).[16]

As discussed above relating to plaintiff's Fourth Amendment constitutional tort claim, this Court is convinced that the plaintiff willfully and intentionally disregarded Officer DeLullo's instruction to "go around." Indeed, he jumped the fence in direct contravention of the officer's instructions. Such conduct provided Officer DeLullo with *at least* a basis to form a good faith and reasonable belief that probable cause to arrest existed. Accordingly, defendants' motion for summary judgment as to Count III of the complaint is granted.[17]

## VII. CONCLUSION

Although this Court is convinced that plaintiff has no legal cause of action against the defendant Officer DeLullo, it is deeply troubled by the conduct that allegedly occurred. The defendant officer acted in accordance with established procedures in his dealings with the plaintiff, but he had other options available to him. Indeed, he could have simply waited for the plaintiff to exit the mens room before he locked the gate, or he could have opened the gate to allow the plaintiff to pass through. In short, the defendant officer did not have to exercise the complete panoply of authority with which his office is delegated. Moreover, the Court finds the use of racial epithets by an officer of the law to be offensive and entirely unwarranted.[18] Police officers must be unequivocally instructed that the use of racial slurs will not be tolerated and will subject a police officer to severe punishment if he engages in such conduct.

Officer DeLullo also exercised the full extent of his authority when he was responsible for plaintiff's being fingerprinted and held in custody for close to five hours. It is clear that, while his conduct in this regard was permissible because he "followed the book," here again, Officer DeLullo had other options which he chose not to exercise. For example, he could have simply sent the plaintiff on his way after orally reprimanding him for not heeding an officer's instructions. Instead, by "following the book" the defendant officer was able to act as prosecutor, judge, and jury which resulted in the plaintiff receiving a five-hour jail sentence without the benefit of a real trial. The defendant officer took these actions with the presumed knowledge that no court would have given plaintiff a jail term for his minor transgression. Because the defendant officer "followed the book" no civil liability can attach to his actions. However, being absolved of civil liability should in no way be taken as approbation of his conduct in this case. Officer DeLullo, for whatever motive or reason, decided to escalate this little incident into a "federal case."

The Court is appalled to think that officers of the Park Service exercise so little discretion in discharging their duties. In addition, the Court cannot understand why such actions were taken without supervision by superiors within the Park Police. While discretion and common sense are difficult to teach, the Court would hope that

---

**16.** Under the common law of the District of Columbia, any defense available to the individual arresting officer is available to his/her principal sued under the doctrine of *respondeat superior*. Therefore, this is a defense available to the United States. *Lucas*, 443 F.Supp. at 544, citing *Wade v. District of Columbia*, 310 A.2d 857 (D.C.1973).

**17.** Comment b to Section 118 of the Restatement of Torts (Second) provides a succinct explanation for entering judgment against plaintiff on his common law based claims. Comment b reads as follows:

*False Arrest.* An arrest usually involves a confinement ... and, in such a case, the actor unless privileged is liable for "false imprisonment" under the rules stated in §§ 35–45 A.

An arrest, whether with or without a warrant, usually involves conduct which, unless privileged, is an "assault" or "battery" as well as a "false imprisonment." If an arrest is made by a mere touching without confinement, as in the execution of a valid warrant, the touching is offensive and, unless privileged, is a "battery" under the rules stated in §§ 18–20. *Where a privilege to arrest exists, it justifies not only the confinement but also any conduct which is reasonably necessary to effect the arrest.* (emphasis added).

**18.** In making this comment, the Court assumes the truth of plaintiff's allegations. *See supra* note 4.

the Park Service could find a way to encourage its officers to use sound discretion in discharging their responsibilities. Officers must always carry out their duties in a purely objective fashion. They must not allow themselves to be taunted or allow their emotions to govern their actions. Instead, they must anticipate the reactions that citizens may have in their encounters with the police and exercise only that degree of authority and force necessary to resolve the matter. In short, they should refrain from overreaction. As a general rule when dealing with these minor confrontations, officers should interface with the public in the same way they would expect to be treated if the roles were reversed.

Officer DeLullo is fortunate in this instance, but he might not be so lucky the next time around, especially if this opinion is placed in his file. Of course, nothing stated in this opinion precludes the Park Police from taking appropriate administrative action. Specifically, the defendant officer might benefit from being required to take courses in the exercise of good judgment, objectivity, and common sense. Therefore, the Court recommends that Officer DeLullo's supervisors closely examine the facts of this case in an effort to determine what steps can be taken to instruct DeLullo and other officers how to reasonably exercise their awesome authority when confronted with similar "walking on the grass" episodes.

### ORDER

Upon consideration of defendants' motion to dismiss, or in the alternative for summary judgment, the plaintiff's opposition thereto, after hearing the arguments of counsel, and in accordance with the the Court's written opinion of this date, it is this 12 day of June 1990, hereby

ORDERED that the defendants' motion is granted as to all counts of the plaintiff's complaint.

SO ORDERED.