WESTFALL ET AL. *v.* ERWIN ET UX.

No. 86–714.   Argued November 2, 1987—Decided January 13, 1988

MARSHALL, J., delivered the opinion for a unanimous Court.

*Deputy Solicitor General Ayer* argued the cause for petitioners. With him on the briefs were *Solicitor General Fried, Assistant Attorney General Willard, Andrew J. Pincus, Barbara L. Herwig,* and *Larry L. Gregg.*

*M. Clay Alspaugh* argued the cause and filed a brief for respondents.

JUSTICE MARSHALL delivered the opinion of the Court.

Respondent William Erwin and his wife respondent Emely Erwin brought a state-law tort suit against petitioners, federal employees in the Executive Branch, alleging that he had suffered injuries as a result of petitioners' negligence in performing official acts. The issue presented is whether these federal officials are absolutely immune from liability under state tort law for conduct within the scope of their employment without regard to whether the challenged conduct was discretionary in nature.

I

Respondents William and Emely Erwin commenced this tort action in state court. At the time of the alleged tort, William Erwin was employed by the Federal Government as a civilian warehouseman at the Anniston Army Depot in Anniston, Alabama. Petitioners were supervisors at the Depot.[1] Respondents' complaint alleged that while working at the Depot William Erwin came into contact with bags of

---

[1] Petitioner Westfall was the chief of the Receiving Section at the Depot, petitioner Rutledge was the chief of the Breakdown and Bulk Delivery Unit, and petitioner Bell was the chief of Unloading Unit No. 1. 1 Record, Exh. A, p. 1.

toxic soda ash that "were improperly and negligently stored."
1 Record, Complaint ¶ 3. The complaint stated that William
Erwin suffered chemical burns to his eyes and throat when
he inhaled soda ash dust that had spilled from its bag. Wil-
liam Erwin also asserted that the soda ash "should not have
been routed to the warehouse where [he] was working," and
that "someone should have known that it was there and pro-
vided [him] with some warning as to its presence and danger
before [he] inhaled it." 1 Record, Doc. No. 4, p. 1. The
complaint charged petitioners with negligence "in proxi-
mately causing, permitting, or allowing [him] to inhale the
. . . soda ash." 1 Record, Complaint ¶ 6.

Petitioners removed the action to the United States Dis-
trict Court for the Northern District of Alabama pursuant to
28 U. S. C. § 1442(a)(1). The District Court held that peti-
tioners were absolutely immune from suit and granted sum-
mary judgment in their favor. After finding that the alleged
tort was committed while petitioners were acting within the
scope of their employment, the court held that "any federal
employee is entitled to absolute immunity for ordinary torts
committed within the scope of their jobs." Civ. Action
No. CV85–H–874–S, p. 2 (June 5, 1985). The Court of Ap-
peals reversed, reasoning that a federal employee enjoys im-
munity "'only if the challenged conduct is a discretionary act
*and* is within the outer perimeter of the actor's line of duty.'"
785 F. 2d 1551, 1552 (CA11 1986) (quoting *Johns* v. *Pettibone
Corp.*, 769 F. 2d 724, 728 (CA11 1985)). The court held that
the District Court erred in failing to consider whether the
challenged conduct was discretionary, in addition to being
within the scope of petitioners' duties, before finding that pe-
titioners were absolutely immune from suit. Summary judg-
ment was inappropriate, the court concluded, because re-
spondents had "alleged undisputed facts sufficient to create a
material question of whether or not [petitioners'] complained-
of acts were discretionary." 785 F. 2d, at 1553.

We granted certiorari, 480 U. S. 905 (1987), to resolve the dispute among the Courts of Appeals as to whether conduct by federal officials must be discretionary in nature, as well as being within the scope of their employment, before the conduct is absolutely immune from state-law tort liability.[2] We affirm.

## II

In *Barr* v. *Matteo*, 360 U. S. 564 (1959), and *Howard* v. *Lyons*, 360 U. S. 593 (1959), this Court held that the scope of absolute official immunity afforded federal employees is a matter of federal law, "to be formulated by the courts in the absence of legislative action by Congress." *Id.*, at 597. The purpose of such official immunity is not to protect an erring official, but to insulate the decisionmaking process from the harassment of prospective litigation. The provision of immunity rests on the view that the threat of liability will make federal officials unduly timid in carrying out their official duties, and that effective government will be promoted if officials are freed of the costs of vexatious and often frivolous damages suits. See *Barr* v. *Matteo*, *supra*, at 571; *Doe* v. *McMillan*, 412 U. S. 306, 319 (1973). This Court always has recognized, however, that official immunity comes at a great cost. An injured party with an otherwise meritorious tort claim is denied compensation simply because he had the misfortune to be injured by a federal official. Moreover, absolute immunity contravenes the basic tenet that individuals be held accountable for their wrongful conduct. We therefore have held that absolute immunity for federal officials is justified only when "the contributions of immunity to effective

---

[2] Compare *General Electric Co.* v. *United States*, 813 F. 2d 1273, 1276–1277 (CA4 1987), and *Poolman* v. *Nelson*, 802 F. 2d 304, 307 (CA8 1986) (federal officials absolutely immune from state-law tort suits for conduct within the scope of their employment), with *Johns* v. *Pettibone Corp.*, 769 F. 2d 724, 728 (CA11 1985), and *Araujo* v. *Welch*, 742 F. 2d 802, 804 (CA3 1984) (federal official's conduct absolutely immune only if within scope of employment *and* discretionary).

government in particular contexts outweigh the perhaps recurring harm to individual citizens." *Doe* v. *McMillan*, *supra*, at 320.[3]

Petitioners initially ask that we endorse the approach followed by the Fourth and Eighth Circuits, see *General Electric Co.* v. *United States*, 813 F. 2d 1273, 1276–1277 (CA4 1987); *Poolman* v. *Nelson*, 802 F. 2d 304, 307 (CA8 1986), and by the District Court in the present action, that all federal employees are absolutely immune from suits for damages under state tort law "whenever their conduct falls within the scope of their official duties." Brief for Petitioners 12. Petitioners argue that such a rule would have the benefit of eliminating uncertainty as to the scope of absolute immunity for state-law tort actions, and would most effectively ensure that federal officials act free of inhibition. Neither the purposes of the doctrine of official immunity nor our cases support such a broad view of the scope of absolute immunity, however, and we refuse to adopt this position.

The central purpose of official immunity, promoting effective government, would not be furthered by shielding an official from state-law tort liability without regard to whether the alleged tortious conduct is discretionary in nature. When an official's conduct is not the product of independent judgment, the threat of liability cannot detrimentally inhibit

---

[3] In determining the propriety of shielding an official from suit under the circumstances, this Court has long favored a "functional" inquiry—immunity attaches to particular official functions, not to particular offices. See, *e. g., Forrester* v. *White, ante*, at 224; *Harlow* v. *Fitzgerald*, 457 U. S. 800, 811–812 (1982); *Doe* v. *McMillan*, 412 U. S., at 319–320; *Barr* v. *Matteo*, 360 U. S. 564, 572–573 (1959). The adoption of this functional approach reflects the Court's concern, expressed in *Doe*, that federal officials be granted absolute immunity only insofar as the benefits of immunity outweigh the costs. Because the benefits of official immunity lie principally in avoiding disruption of governmental functions, the inquiry into whether absolute immunity is warranted in a particular context depends on the degree to which the official function would suffer under the threat of prospective litigation.

that conduct. It is only when officials exercise decisionmaking discretion that potential liability may shackle "the fearless, vigorous, and effective administration of policies of government." *Barr* v. *Matteo, supra,* at 571. Because it would not further effective governance, absolute immunity for nondiscretionary functions finds no support in the traditional justification for official immunity.

Moreover, in *Doe* v. *McMillan, supra,* we explicitly rejected the suggestion that official immunity attaches solely because conduct is within the outer perimeter of an official's duties. *Doe* involved a damages action for both constitutional violations and common-law torts against the Public Printer and the Superintendent of Documents arising out of the public distribution of a congressional committee's report. After recognizing that the distribution of documents was "'within the outer perimeter' of the statutory duties of the Public Printer and the Superintendent of Documents," the Court stated: "[I]f official immunity automatically attaches to any conduct expressly or impliedly authorized by law, the Court of Appeals correctly dismissed the complaint against these officials. This, however, is not the governing rule." *Id.,* at 322. The Court went on to evaluate the level of discretion exercised by these officials, finding that they "exercise discretion only with respect to estimating the demand for particular documents and adjusting the supply accordingly." *Id.,* at 323. The Court rejected the claim that these officials enjoyed absolute immunity for all their official acts, and held instead that the officials were immune from suit only to the extent that the Government officials ordering the printing would be immune for the same conduct. See *id.,* at 323–324. The key importance of *Doe* lies in its analysis of discretion as a critical factor in evaluating the legitimacy of official immunity. As *Doe*'s analysis makes clear, absolute immunity from state-law tort actions should be available only when the conduct of federal officials is within the scope

of their official duties *and* the conduct is discretionary in nature.[4]

As an alternative position, petitioners contend that even if discretion is required before absolute immunity attaches, the requirement is satisfied as long as the official exercises "minimal discretion." Brief for Petitioners 15. If the precise conduct is not mandated by law, petitioners argue, then the act is "discretionary" and the official is entitled to absolute immunity from state-law tort liability. We reject such a wooden interpretation of the discretionary function requirement. Because virtually all official acts involve some modicum of choice, petitioners' reading of the requirement would render it essentially meaningless. Furthermore, by focusing entirely on the question whether a federal official's precise conduct is controlled by law or regulation, petitioners' approach ignores the balance of potential benefits and costs of absolute immunity under the circumstances and thus loses sight of the underlying purpose of official immunity doctrine. See *Doe* v. *McMillan*, 412 U. S., at 320. Conduct by federal officials will often involve the exercise of a modicum of choice and yet be largely unaffected by the prospect of tort liability, making the provision of absolute immunity unnecessary and unwise.

---

[4] We recognize that the plurality opinion in *Barr* v. *Matteo, supra,* contained language that has led some courts to believe that conduct within the outer perimeter of an official's duties is automatically immune from suit. See, *e. g., Poolman* v. *Nelson,* 802 F. 2d, at 307–308. A close reading of *Barr,* however, shows that the discretionary nature of the act challenged in that case was central to Justice Harlan's opinion. Justice Harlan specifically noted that the conduct in question "was an appropriate exercise of discretion which an officer of that rank must possess if the public service is to function effectively" and that immunity applies "to discretionary acts at those levels of government where the concept of duty encompasses the sound exercise of discretionary authority." 360 U. S., at 575 (footnote omitted). Moreover, *Barr* did not purport to depart from the widely followed common-law rule that only discretionary functions are immune from liability, see W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts 1059–1060 (5th ed. 1984).

In the present case, the Court of Appeals, reviewing a summary judgment determination, held that petitioners were not entitled to official immunity solely because they were acting within the scope of their official duties, and that there was a material question whether the challenged conduct was discretionary. 785 F. 2d, at 1553. Applying the foregoing reasoning to this case, it is clear that the court was correct in reversing the District Court's grant of summary judgment. Petitioners have the burden of proving that they are entitled to absolute immunity from the tort suit. Respondent William Erwin asserted that petitioners' "duties only require them to follow established procedures and guidelines," and that they "are not involved in any policy-making work for the United States Government." 1 Record, Doc. No. 4, p. 2. In response, petitioners have not presented any evidence relating to their official duties or to the level of discretion they exercise. Petitioners aver merely that the alleged tortious conduct was "within the scope of their official duties." 1 Record, Exh. A, p. 2. As we stated above, federal officials are not absolutely immune from state-law tort liability for all actions committed within the outer perimeter of their duties. A material issue of fact thus exists as to whether petitioners exercised sufficient discretion in connection with the alleged tort to warrant the shield of absolute immunity.

Because this case comes to us on summary judgment and the relevant factual background is undeveloped, we are not called on to define the precise boundaries of official immunity or to determine the level of discretion required before immunity may attach. In deciding whether particular governmental functions properly fall within the scope of absolute official immunity, however, courts should be careful to heed the Court's admonition in *Doe* to consider whether the contribution to effective government in particular contexts outweighs the potential harm to individual citizens. Courts must not lose sight of the purposes of the official immunity

doctrine when resolving individual claims of immunity or formulating general guidelines. We are also of the view, however, that Congress is in the best position to provide guidance for the complex and often highly empirical inquiry into whether absolute immunity is warranted in a particular context. Legislated standards governing the immunity of federal employees involved in state-law tort actions would be useful.

## III

The Court of Appeals was correct in holding that absolute immunity does not shield official functions from state-law tort liability unless the challenged conduct is within the outer perimeter of an official's duties and is discretionary in nature. Moreover, absolute immunity does not attach simply because the precise conduct of the federal official is not prescribed by law. There is thus a genuine issue of material fact as to whether petitioners' conduct is entitled to absolute immunity. Accordingly, the judgment of the Court of Appeals is affirmed.

*It is so ordered.*