**IT IS HEREBY ORDERED** that the Defendants' Motion for Preliminary Injunction (# 10) is **DENIED.**

**MIDLAND PSYCHIATRIC ASSOCIATES, INC., Plaintiff,**

v.

**UNITED STATES of America and Mutual of Omaha Insurance Company, Defendants.**

**No. 96–1245–CV–W–3.**

United States District Court,
W.D. Missouri,
Western Division.

July 8, 1997.

James M. Ziegler, Humphrey, Farrington & McClain, P.C., Independence, MO, for Midland Psychiatric Associates, Inc.

Alleen S. VanBebber, U.S. Attorney's Office, Kansas City, MO, for Health Care Financing Administration, U.S.

Alleen S. VanBebber, U.S. Attorney's Office, Kansas City, MO, Sally B. Surridge, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, MO, for Mutual of Omaha Ins. Co.

### ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

SMITH, District Judge.

Pending is Defendants' Motion to Dismiss Plaintiff's First Amended Complaint.[1] For the reasons set forth below, the Motion to Dismiss is granted.

### I. BACKGROUND

The following facts are gleaned from the First Amended Complaint and must be considered as true for purposes of the pending motions. The defendants are the United States (the "Government") and Mutual of Omaha Insurance Company ("Mutual"). Plaintiff provides partial hospitalization services to nursing home residents pursuant to contracts with various hospitals ("Hospitals"). Under these contracts, Plaintiff set up partial hospitalization programs in long term care facilities and billed the Hospitals for the services provided. The Hospitals then filed claims for reimbursement from Medicare. "Partial hospitalization" is a program furnished on an outpatient basis and is designed to provide "a more intensive functioning and reduce or control a patient's symptoms so as to prevent relapse or hospitalization." First Amended Complaint, ¶ 8.

Partial hospitalization is covered under Part B of Medicare.[2]

Part B of the Medicare Act, 42 U.S.C. § 1395j et seq., establishes a voluntary program of supplemental medical insurance covering expenses not covered by the Part A program, such as reasonable charges for physicians' services, medical supplies, and laboratory tests. Payments for Part B expenses are made by private insurance carriers under contract to the Department of Health and Human Services, 42 U.S.C. § 1395u, and the claimant is entitled to reconsideration of the carrier's initial denial of those claims. 42 CFR §§ 405.807–405.860 (1983).

*Heckler v. Ringer*, 466 U.S. 602, 609 n. 4, 104 S.Ct. 2013, 2018 n. 4, 80 L.Ed.2d 622 (1984); *see also United States v. Bushman*, 862 F.2d 1327, 1329 (8th Cir.1988), *cert. denied*, 493 U.S. 810, 110 S.Ct. 53, 107 L.Ed.2d 21 (1989). In this case, the intermediate insurance company was Mutual. In August 1993, Mutual began denying those portions of the Hospitals' claims that were based on services supplied by Plaintiff; the denials were ostensibly based on lack of medical necessity or failure to have a doctor present during treatment. These denials were issued even though allegedly similar claims for reimbursement were approved for other providers of partial hospitalization services. In October and November of 1993, officials from Plaintiff, the Hospitals, Mutual and the Health Care Financing Administration ("HCFA") (the Government agency charged with administering the Medicare program) met; Plaintiff and the Hospitals were assured that there were no problems with the claims submitted and the claims were reimbursable. Assurances similar to these were received as late as February 1994.

Meanwhile, in November 1993, Mutual advised one of the Hospitals that Plaintiff's program would be treated as a "new" program and would be placed on a "routine, focused review." Instead, Mutual reviewed all charts related to reimbursement requests involving Plaintiff's services, and claims con-

---

1. In considering this matter, the Court has reviewed the following materials: (1) the Government's March 21, 1997 Motion to Substitute, Strike Jury and Punitive Damage Demands, and to Dismiss, (2) Plaintiff's April 21, 1997 response to this motion, (3) the Government's May 19, 1997 Amended Motion, (4) Plaintiff's May 27, 1997 response to the Amended Motion, (5) the Government's June 11, 1997 reply to Plaintiff's response, and (6) Mutual's independent Motion to Dismiss (filed May 5, 1997).

2. This allegation appears in Paragraph 8 of the First Amended Complaint, and actually says that "[p]artial hospitalization by a hospital through its outpatient department is a Medicare Part B under A[sic] service covered for Medicare beneficiaries subject to certain requirements." Even if the Court has misinterpreted this statement and partial hospitalization is actually covered under Part A of Medicare, the legal analysis does not change.

tinued to be denied. The degree of review is alleged to be improper because the manual provided to intermediaries calls for a sampling of claims as opposed to 100% review. These denials led some (if not all) of the Hospitals to terminate their contracts with Plaintiff. In addition, other hospitals that were considering entering contracts with Plaintiff decided not to do so.

Plaintiff alleges that Mutual took these actions in order to shut down Plaintiff's business as a cost-cutting effort. Accordingly, Count I alleges that Mutual intentionally interfered with Plaintiff's contracts and other business expectations. Count II alleges that the Government was negligent in its failure to properly supervise Mutual. The Defendants contend this Court lacks jurisdiction over both claims and request dismissal pursuant to Fed.R.Civ.P. 12(b)(1).

## II. DISCUSSION

### A. Count I

■ Count I alleges a common-law tort against Mutual, and jurisdiction is ostensibly based on the parties' diversity of citizenship. The elements for tortious interference with business expectation are as follows: "(1) a contract or valid business expectancy; (2) defendant's knowledge of the contract or relationship; (3) a breach induced or caused by defendant's intentional interference, (4) absence of justification; and (5) damages." *Rice v. Hodapp*, 919 S.W.2d 240, 245 (Mo. banc 1996). The fourth element is crucial to some of the Court's reasoning with respect to Defendants' motion. "A requisite element of tortious interference with a business relationship is absence of justification. A defendant cannot be held liable for interfering with a business relationship if it has an unqualified right to perform the act." *Id.*

#### 1. Statutory Bar to Review of Claims

■ 42 U.S.C. § 405(h) is made applicable to the Medicare statutes by virtue of 42 U.S.C. § 1395ii and provides as follows: [3]

The findings and decision of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

This provision is significant because Plaintiff contends that Mutual intended to drive it out of business and accomplished this goal by denying reimbursement for its services. In order to prove all the elements of this tort, Plaintiff must demonstrate that Mutual acted without justification, thus requiring the Court (or a jury) to decide whether Mutual had "an unqualified right" to deny those claims. This will necessarily require the Court to decide whether the claims should or should not have been granted—or, in other words, to review the correctness of Mutual's decision. Plaintiff understandably wants to shift the focus to Mutual's alleged decision to drive Plaintiff out of business. However, this is an unduly narrow view of the wrongful act being challenged. The act that allegedly interfered with Plaintiff's business expectations was the denial of claims; therefore it is the denial of claims that must be examined. Unfortunately, Section 405(h) prohibits such an inquiry.

The Supreme Court discussed § 405(h) in *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975) and declared that the first two sentences "assure that administrative exhaustion will be required." 422 U.S. at 757, 95 S.Ct. at 2463. The third sentence, however, has a different, broader sweep. *Id.* Application of the first two and the last sentences are discussed separately below.

#### a. Exhaustion of Administrative Remedies: Sentences One and Two

The first two sentences require, as *Salfi* explains, exhaustion of administrative reme-

**3.** Section 1395ii provides that § 405(h)'s references to the Commissioner of Social Security shall be references to the Secretary of Health and Human Services when § 405(h) is applied to the Medicare statutes.

dies. Plaintiff contends that it was not a party to the administrative process and therefore it need not exhaust its remedies. It may be that Plaintiff is still bound by the administrative proceedings because it was in privity with a party to those proceedings. Plaintiff contends that it was not eligible to participate, but it is not immediately clear why it could not have qualified under 42 U.S.C. § 1395cc and applicable regulations. It may simply be that the decision to let the Hospitals present the claims in the administrative process was a matter of negotiation between Plaintiff and the Hospitals. In any event, Defendants do not contest the matter, so the Court will accept that Plaintiff was not a party within the meaning of sentence one.

However, sentence two flatly declares that "[n]o findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided." Sentence two's reach is not limited to participants, but rather guards the Secretary's decisions from review other than as specifically provided. It cannot be read to simply bind participants to the results of the administrative process; this is already accomplished by sentence one. *Cf. Salfi,* 422 U.S. at 757–58, 95 S.Ct. at 2462–64 (adopting interpretation of § 405(h) that does not render any one sentence superfluous). Sentence two's natural interpretation is to bar second-guessing, reconsideration, or any other type of review except as part of the process Congress established for review of Medicare claims. Consequently, this Court lacks the authority to determine whether the claims involved in this case were correctly or incorrectly denied, so it is impossible for Plaintiff to prove that Mutual did not have a right to deny the claims.

### b. *Suits for Damages: Sentence Three*

Section 405(h)'s third sentence provides that "[n]o action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter." Although there are several issues to be addressed in applying this provision, it is this Court's con-clusion that it bars Plaintiff's claim on Count I.

■ The first issue to be addressed is whether Mutual is an "officer or employee" of the United States or the Secretary of Health and Human Services. The Eighth Circuit has answered this question affirmatively in the context of common law immunities. *Bushman v. Seiler,* 755 F.2d 653, 655 (8th Cir.1985) ("It is well settled that Medicare intermediaries and carriers can be governmental agents for immunity purposes."). The Seventh Circuit explicitly held that Medicare intermediaries qualify as officers or employees under § 405(h), noting that "Congress intended for private organizations (and specifically fiscal intermediaries) to play a 'considerable role' in the Medicare reimbursement program." *Bodimetric Health Services, Inc. v. Aetna Life & Cas.,* 903 F.2d 480, 487 (7th Cir.), *cert. denied,* 498 U.S. 1012, 111 S.Ct. 579, 112 L.Ed.2d 584 (1990). "If dissatisfied claimants could avoid the preclusive effect of section 405(h) by simply bringing suit against the fiscal intermediary instead of the Secretary, the Medicare Act's goals of efficiency and finality would be substantially undermined." *Id.* at 487–88. Given the Medicare Act's structure and the integral role played by intermediaries, it is only logical to include them within the ambit of the third sentence's protection.

■ The second issue is whether the third sentence applies to suits in which jurisdiction is based—as it is with respect to Count I—on 28 U.S.C. § 1332 (diversity of citizenship). By its terms, sentence three bars suits when jurisdiction is based on 28 U.S.C. § 1331 (federal question jurisdiction) or 28 U.S.C. § 1346 (suits against the United States). A literal application of the third sentence suggests it bars suits against the United States and its employees and officers unless the jurisdiction is based on diversity of citizenship—an interpretation that makes absolutely no sense. The protection afforded would then amount to little more than Swiss cheese, particularly for the employees and officers who may not reside in the same states as potential plaintiffs. Statutory immunity in a complex federal program would rise or fall depending upon where the parties

happened to live—a fact that has absolutely no bearing on Medicare's administration. "Congress is presumed not to have intended absurd (impossible) results. Courts will not foolishly bind themselves to the plain language of. a statute where doing so would compel an odd result." *Hughey v. JMS Dev. Corp.,* 78 F.3d 1523, 1529 (11th Cir.) (quotations and citations omitted), *cert. denied,* —— U.S. ——, 117 S.Ct. 482, 136 L.Ed.2d 377 (1996); *see also In re Trans Alaska Pipeline Rate Cases,* 436 U.S. 631, 643, 98 S.Ct. 2053, 2061, 56 L.Ed.2d 591 (1978).

The *Bodimetric* court offered a historical explanation for this apparent oddity. 903 F.2d at 488–90. Originally, the third sentence barred suits for damages brought under 28 U.S.C. § 41, which codified practically all grants of jurisdiction to district courts (including diversity jurisdiction). In 1976, the Office of Law Revision Counsel revised § 405(h) to its present form and, inexplicably, included only the two jurisdictional statutes that presently appear. Congress did not adopt these changes until it enacted the Deficit Reduction Act of 1984; Subtitle D (Technical Changes) adopted the Law Revision Counsel's change but cautioned that the amendment should not "be construed as changing or affecting any right, liability, status or interpretation which existed (under the provisions of law involved) before that date." *Id.* at 489. The *Bodimetric* court interpreted this caution to mean that "Congress clearly expressed its intent not to alter the substantive scope of section 405(h). Because the previous version of section 405(h) precluded judicial review of diversity actions, so too must newly revised section 405(h) bar these actions."

In light of the § 405(h)'s evolution and the absurdity of permitting only diversity cases for damages to be brought, the Court concludes that Congress intended to include such cases within the third sentence's bar.[4]

■ The third issue is whether Count I is a claim for damages "arising under" the Medicare statutes. Plaintiff advances a position that adopts a narrow interpretation of this phrase and argues that its claims do not concern Medicare law and are not "inextricably intertwined" with decisions made under the Medicare Act. Plaintiff's theory is that the denial of claims is not relevant to its case; the only relevant issue is "Mutual's decision to close the program."

■ As noted above, Plaintiff's view is incorrect given the elements of the tort it asserts in Count I. Plaintiff also employs an improperly narrow interpretation of the phrase "arising under." This phrase is to be accorded a broad interpretation. *Ringer,* 466 U.S. at 615, 104 S.Ct. at 2021–22 (citing *Salfi,* 422 U.S. at 760–61, 95 S.Ct. at 2464–65). In *Salfi,* the Court noted that "[i]t would, of course, be fruitless to contend that appellees' claim is one which does not arise under the Constitution, since their constitutional arguments are critical to their complaint. But it is just as fruitless to argue that this action does not *also* arise under the Social Security Act." 422 U.S. at 760, 95 S.Ct. at 2464 (emphasis added). Thus, Plaintiff's claim that its suit arises solely under state tort law is not acceptable. The fact that Plaintiff does not seek payment of benefits is irrelevant. *Ringer,* 466 U.S. at 615, 104 S.Ct. at 2021–22 ("It is of no importance that respondents ... sought only declaratory and injunctive relief and not an actual award of benefits as well."); 466 U.S. at 623, 104 S.Ct. at 2026 ("there is no indication in *Salfi* that

---

4. The *Bodimetric* court believed its decision to be contrary to, and therefore expressly disagreed with, the Eighth Circuit's decision in *Rochester Methodist Hosp. v. Travelers Ins. Co.,* 728 F.2d 1006 (8th Cir.1984). In that case, the district court had originally dismissed the case because § 405(h) barred the suit. 728 F.2d at 1010 n. 6. Upon reconsideration, the district court transferred the claims against the Department of Health and Human Services to the Court of Claims and "held that, since the United States was no longer a party to the case, the Court had diversity jurisdiction to hear Rochester's state-law claims against Travelers." *Id.* at 1010. The Eighth Circuit eventually affirmed the district court's judgment in favor of the plaintiff; however-er, the Court of Appeals did not discuss § 405(h). It may be that the defendant accepted the district court's implicit holding that the third sentence did not bar diversity suits (even though Congress had not yet adopted the Law Revision Counsel's revision). In any event, the issue was not presented to or addressed by the Eighth Circuit, so *Rochester* does not dictate a particular result on this issue.

our holding in any way depended on the fact that the claimants there sought an award of benefits. Furthermore, today we explicitly hold that our conclusion that the claims … are barred by § 405(h) is in no way affected by the fact that those respondents did not seek an award of benefits."). In fact, one of the plaintiffs in *Ringer* had not even filed a claim for benefits, yet the Court held his suit arose under the Medicare statutes. "Although it is true that Ringer is not seeking the immediate payment of benefits, he is clearly seeking to establish a right to future payments should he ultimately decide to proceed with BCBR surgery." *Id.* at 621, 104 S.Ct. at 2025. Here, Plaintiff does not seek payment of benefits, but as part of its tort claim it must establish that there existed a *past* right to payments of benefits. Section 405(h) prohibits this Court from ruling on that issue.

The Seventh Circuit reached this same conclusion in *Bodimetric*. There, the plaintiff alleged that the Medicare intermediary had engaged in an arbitrary campaign of denials in order to improve its denial rate and, hence, its performance. The plaintiff asserted several theories of recovery, including "intentional harm to property interest," fraud, and breach of fiduciary relationship. 903 F.2d at 482–83. The Seventh Circuit held that

> [a] party cannot avoid the Medicare Act's jurisdictional bar simply by styling its attack as a claim for collateral damages instead of a challenge to the underlying denial of benefits. If litigants who have been denied benefits could routinely obtain judicial review of these decisions by recharacterizing their claims under state and federal causes of action, the Medicare Act's goal of limited judicial review for a substantial number of claims would be severely undermined.

*Id.* at 487. In light of the Supreme Court's holdings in *Salfi* and *Ringer*, the Seventh Circuit's reasoning appears sound; § 405(h) bars Plaintiff's claim against Mutual.

### 2. Sovereign Immunity, Official Immunity and the Federal Tort Claims Act

The parties have cited several provisions of the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.* (the "FTCA") and cases that discuss immunity afforded to government agents, all in an attempt to demonstrate that Mutual is (or is not) entitled to immunity in this case. The Court does not believe that these materials can be "blended" together, and will endeavor to analyze each subject separately.

The best starting point is the principal cases championed by each party: Plaintiff argues that *Rochester Methodist Hosp. v. Travelers Ins. Co.*, 728 F.2d 1006 (8th Cir. 1984) demonstrates that Mutual is not entitled to immunity, while the Defendants cite *Bushman v. Seiler*, 755 F.2d 653 (8th Cir. 1985) for the contrary proposition. The parties fail to apprehend that the two cases discuss different immunities.

In *Rochester*, the district court found that the Medicare intermediary (Travelers) had committed the tort of fraud and entered a judgment accordingly. 728 F.2d at 1010. Travelers argued that the suit was barred by *sovereign* immunity. *Id.* at 1012. The Court of Appeals rejected this defense because "agents, even government agents, may be subject to liability either in tort or in contract." *Id.* The Court of Appeals went on to hold that the suit against Travelers was not really a suit against the government because the suit did not seek injunctive relief or an award of money from the government's treasury, but rather sought monetary damages from the agent. *Id.* at 1012–13. The focus on the remedy sought was deemed so important that, except for an issue not advanced here, the fact that the plaintiff sought monetary damages from Travelers would have been dispositive on the issue. *Id.* at 1013.

In *Bushman*, the defendant was a consultant for the Medicare intermediary who wrote a letter to the intermediary documenting his conclusions about the plaintiff's services. The plaintiff sued the consultant, alleging causes of action for libel and slander. 755 F.2d at 654. Instead of examining whether the consultant was protected by *sovereign* immunity, the Court of Appeals considered whether the consultant was protected by *official* immunity. *Id.* at 655. The dis-

tinction was drawn clearer when the Court observed that the district court had granted the consultant (and one other party not involved in the appeal) both sovereign and official immunity. The Court expressly declined to discuss sovereign immunity, holding that "[b]ecause we find that Seiler was entitled to official immunity, we need not determine whether the district court correctly applied the defense of sovereign immunity." *Id.* at 655 n. 2. With respect to official immunity, the Court held that "Medicare intermediaries and carriers can be governmental agents for immunity purposes," and that the consultant was entitled to immunity "for actions within the scope of his authority." *Id.* at 655. "Such actions must have been within the outer perimeter of Seiler's line of duty for the immunity to apply. More specifically, the act must have more or less connection with the general matters committed by law to the officer's control or supervision, and not be manifestly or palpably beyond his authority." *Id.* (quotations omitted).

The Eighth Circuit next discussed official immunity in *Poolman v. Nelson,* 802 F.2d 304 (8th Cir.1986), where it held that the distinction between discretionary and ministerial functions, though important, was not determinative in assessing whether official immunity exits. 802 F.2d at 307–08. This position was expressly rejected in *Westfall v. Erwin,* 484 U.S. 292, 296, 108 S.Ct. 580, 583–84, 98 L.Ed.2d 619 (1988); instead, the Supreme Court unanimously emphasized that "absolute immunity from state-law tort actions should be available only when the conduct of federal officials is within the scope of their official duties and the conduct is discretionary in nature." 484 U.S. at 297–98, 108 S.Ct. at 584. In an aside, the Court called upon Congress to clarify the protections to be afforded federal employees, stating that "[l]egislated standards governing the immunity of federal employees involved in state-law tort actions would be useful." *Id.* at 300, 108 S.Ct. at 585.

In response to *Westfall,* Congress amended the FTCA and passed the Liability Reform Act, which recognized the absolute immunity the *Westfall* Court declined to recognize under the common law immunity. *See United States v. Smith,* 499 U.S. 160, 163, 111 S.Ct. 1180, 1183–84, 113 L.Ed.2d 134 (1991). To implement these new protections, the FTCA

> authorizes the Attorney General to issue what has come to be called a "scope certification"—a certification that "the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose." 28 U.S.C. Sec. 2679(d)(1)–(2). If the Attorney General issues such a scope certification with respect to an action brought against a federal employee in federal court, the action "shall be deemed" to be an action against the United States under the FTCA, and the United States "shall be substituted as the party defendant." *Id.* Sec. 2679(d)(1).

*Jamison v. Wiley,* 14 F.3d 222, 227 (4th Cir.1994) (footnote omitted).

■■■ With this background, the three principles raised by the parties can be addressed. First, it is clear that sovereign immunity does not protect Mutual. Count I does not seek a monetary judgment that will be paid by the Government, and it does not seek injunctive relief. Second, the FTCA does not apply: although it has argued that Mutual acted within the scope of its duties, the Government has not provided the certification required by 28 U.S.C. § 2679(d). The Government has also expressly withdrawn its request that it be substituted for Mutual as a defendant on Count I. *See* United States' Reply to Plaintiff's Response to Motion to Substitute, Strike, and Dismiss, p. 2 (dated June 11, 1997).[5] The FTCA requires the United States to be substituted as the Defendant, and if the United States expresses a

---

**5.** In the first footnote of its March 21, 1997 Motion, the Government suggested that 42 C.F.R. § 421.5(b) provided grounds both for substituting the Government for Mutual as the defendant on Count I and for granting Mutual immunity.

Having later withdrawn its request for substitution, the former argument must be rejected. The latter position has been rejected by the Eighth Circuit. *Rochester,* 728 F.2d at 1014–15.

desire to *not* be so substituted, the remaining provisions of the FTCA cannot apply.[6]

■■■ However, the Court concludes that official immunity remains a viable defense for Mutual. *Westfall* changed the standard formerly employed by the Eighth Circuit, *Markell v. Pikula*, 841 F.2d 254 (8th Cir.1988) (per curiam), but official immunity has survived both *Westfall* and Congress' amendments to the FTCA. *See Slotten v. Hoffman*, 999 F.2d 333 (8th Cir.1993) (holding that official immunity barred suit). *Westfall* holds that official immunity applies only if the acts complained of are discretionary in nature. Plaintiff contends Mutual did not have discretion (or even authority) to close Plaintiff's operations, but this is not the "act" at issue—the action Mutual took was to deny Medicare reimbursement for Plaintiff's services. In a case that predates *Westfall*—but that employs analysis similar to that required by *Westfall*—the Eighth Circuit ruled that an official charged with determining whether a building satisfied FHA's standards

> necessarily involved the exercising of evaluative judgment by him. The FHA standards were merely general. They were not, and within the realities of the construction field, could not have been made to be, of such minuteness and preciseness as would cause the Supervisor's responsibility to constitute merely a mechanical check-off task. Thus the evaluation and approval which the Supervisor was required to make clearly represented what historically has been termed a discretionary function and not a ministerial one.

*Youngstrom v. Dunn*, 447 F.2d 948, 950 (8th Cir.1971) (per curiam). A short description of a Medicare intermediary's duties demonstrates that they mirror those found worthy of immunity in *Youngstrom:*

> A fiscal intermediary is an entity that has contracted with the Secretary to determine for the Secretary whether services provided ... are covered under the Medicare Act and the amount due the provider of services. The fiscal intermediary must determine whether HHA—submitted expenses

are reasonable and necessary: in particular, it must review claims for compliance with coverage requirements, determine the reasonable cost of services, make payments directly to health care providers, provide consultative services, communicate to providers any information or instruction from HCFA [Health Care Financing Administration], audit provider records and assist with utilization review activities.

*Bodimetric*, 903 F.2d at 490 n. 3 (quotations omitted).

Application of official immunity in a given context is also guided by the following passage from *Westfall:* "In deciding whether particular governmental functions properly fall within the scope of absolute official immunity, however, courts should be careful to heed the Court's admonition in *Doe* [*v. McMillan*, 412 U.S. 306, 93 S.Ct. 2018, 36 L.Ed.2d 912 (1973) ] to consider whether the contribution to effective government in particular contexts outweighs the potential harm to individual citizens. Courts must not lose sight of the purposes of the official.immunity doctrine when resolving individual claims of immunity or formulating general guidelines." 484 U.S. at 299–300, 108 S.Ct. at 585. *Doe* noted that official immunity is bestowed to permit government officials to perform their duties without fear of the need to respond to suits for damages. *Doe*, 412 U.S. at 318–19, 93 S.Ct. at 2027–28. Given the role Congress has bestowed upon Medicare intermediaries, the importance of insuring that intermediaries operate without fear of lawsuits arising from their decisions, and the availability of review of their decisions, *Westfall* and *Doe* confirm that Medicare intermediaries are entitled to official immunity.

### B. Count II

■■■ Count II is brought pursuant to the FTCA and alleges that the Government negligently supervised Mutual. "In order for there to be actionable negligence, the plaintiff must plead and prove: 1) a duty owed by defendant to protect the plaintiff from the

---

**6.** If the FTCA does apply to Count I, it would bar Plaintiff's claim. *E.g.*, 28 U.S.C. § 2680(h); *Selland v. United States*, 966 F.2d 346, 347 (8th

Cir.1992), *cert. denied*, 507 U.S. 923, 113 S.Ct. 1291, 122 L.Ed.2d 682 (1993).

injury complained; 2) a failure to perform that duty; and 3) injury proximately caused by that failure. . . . The duty to supervise has been described by Missouri courts as a 'narrow one,' and a breach of the duty turns upon whether a reasonable person would recognize that an incident of the type alleged could occur and that steps should have been taken to prevent it." *Gray v. Ward,* 929 S.W.2d 774, 787 (Mo.Ct.App.1996). The Government has raised three arguments that it believes are jurisdictional; although the Court does not accept all three of them, they all must be addressed.[7]

### 1. Adequacy of Notice

 In order to assert a claim under the FTCA, a potential plaintiff must "have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency. . . ." 28 U.S.C. § 2675(a), The Government contends Plaintiff failed to satisfy this requirement because its notice did not assert a claim for negligent supervision.

 On May 30, 1996, Plaintiff sent a four-page letter to HHS that detailed the events giving rise to its claim and alleged that certain amounts of money and revenue had been lost "due to the conduct and actions related above." Having reviewed the letter in its entirety, the Court is persuaded that it satisfies § 2675's requirements. Plaintiff was not required to identify each and every legal theory it planned to pursue; its claim was sufficient if it presented sufficient facts to permit the Government to investigate the claim. *Farmers State Sav. Bank v. Farmers Home Admin.,* 866 F.2d 276, 277 (8th Cir. 1989); *see also Orlando Helicopter Airways v. United States,* 75 F.3d 622, 625 (11th Cir.1996); *Santiago–Ramirez v. Secretary of Dept. of Defense,* 984 F.2d 16, 19 (1st Cir. 1993); *Cook v. United States,* 978 F.2d 164, 166 (5th Cir.1992); *Deloria v. Veterans Admin.,* 927 F.2d 1009, 1011 (7th Cir.1991); *Conn v. United States,* 867 F.2d 916, 918–19 (6th Cir.1989). Plaintiff has satisfied this standard.

### 2. Timing of Notice

 The notice required by § 2675(a) must be filed within two years after the claim accrues, 28 U.S.C. § 2401(b), but "[b]ecause suits against the government are subject to equitable tolling, compliance with this limitations period is not a jurisdictional prerequisite to suing the government." *Krueger v. Saiki,* 19 F.3d 1285, 1286 (8th Cir.), *cert. denied,* 513 U.S. 905, 115 S.Ct. 269, 130 L.Ed.2d 187 (1994); *see also Glarner v. United States,* 30 F.3d 697, 701 (6th Cir.1994). Failure to comply with this requirement is an affirmative defense that the Government bears the burden of proving. *Krueger,* 19 F.3d at 1286.

There is no doubt that Plaintiff submitted its notice no earlier than May 30, 1996. According to the First Amended Complaint, Mutual began denying claims related to Plaintiff's services in August 1993. The First Amended Complaint also details a series of meetings and discussions during which the denials were discussed with Mutual, and Mutual delivered assurances that the problems could be resolved. Finally, the First Amended Complaint alleges that Plaintiff learned in June 1994 that Mutual never had any intention of paying the claims. This latter point is critical: absent knowledge that Mutual never had any intention of paying the claims, Plaintiff was missing information critical to its claim that Mutual was acting tortiously and, correspondingly, that the Government was negligent in failing to supervise Mutual.

 The Government has attached portions of a time-line purportedly prepared by Plaintiff as an exhibit to its March 21, 1997 motion. Portions of this time-line cast some doubt on Plaintiff's allegations regarding the timing of its discovery. Although extraneous materials may properly be considered when ruling on a motion to dismiss for lack of jurisdiction, such materials may not be considered when ruling on a motion to dismiss for failure to state a claim. *See*

---

**7.** The Government has also suggested that it did not owe Plaintiff a duty. The Court expresses no opinion as to the merits of this argument.

Fed.R.Civ.P. 12(b). When a statute of limitations defense involves contested issues—including particularly claims of tolling—a motion to dismiss is an inadequate method for disposing of the issue. *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206–07 (9th Cir.1995); *see also Stephens v. Associated Dry Goods Corp.*, 805 F.2d 812, 814 (8th Cir.1986). It may be that if this case were to continue the Government might prevail on a motion for summary judgment on this issue; however, based on the present record and the present procedural posture, the Court cannot decide that Count II is time-barred.

### 3. Section 405(h)

The Court concludes that 42 U.S.C. § 405(h) deprives the Court of jurisdiction over Count II. First, the clear words of the statute bars an FTCA suit that arises under the Medicare statutes. Count II challenges the Government's supervision of the fiscal intermediary—which satisfies the broad interpretation accorded to the phrase "arises under."

That § 405(h) bars this suit can also be demonstrated by considering the facts that Plaintiff must prove to prevail. To prevail on Count II, Plaintiff must prove that the Government breached its duty to supervise Mutual and that Plaintiff was damaged. The Government's liability is thus derivative; it depends upon a showing that the entity the Government was supposed to supervise—Mutual—acted tortiously. Given that the Court is not empowered to decide Count I, there is no way for it to decide the issues raised by Count II. Absent the ability to prove that Mutual wrongfully denied the Medicare claims at issue, Plaintiff has no way to prove that it was damaged by the Government's negligence.

### III. CONCLUSION

In accordance with the above, Count I is dismissed for the following independent reasons: (1) Defendant Mutual of Omaha is protected by official immunity, (2) sentences one and two of § 405(h), acting in concert, require exhaustion of administrative remedies, and (3) sentence three of § 405(h) bars consideration of the claim. Furthermore, Count II is dismissed because § 405(h) bars consideration of the claim.

IT IS SO ORDERED.