# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

————————

No. 97-3401WM

————————

| | | |
|---|---|---|
| Midland Psychiatric Associates, Inc., | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Western |
| | * | District of Missouri. |
| United States of America; Mutual of | * | |
| Omaha Insurance Company, | * | |
| | * | |
| Appellees. | * | |

————————

Submitted: April 15, 1998
Filed: June 4, 1998

————————

Before FAGG and HANSEN, Circuit Judges, and STROM,[*] District Judge.

————————

FAGG, Circuit Judge.

Midland Psychiatric Associates, Inc. (Midland) appeals the district court's two-pronged order dismissing Midland's lawsuit against the United States and Mutual of Omaha Insurance Company (Mutual) for lack of subject matter jurisdiction. See Fed. R. Civ. P. 12(b)(1). The district court held Midland's tortious interference with contract claim against Mutual, and Midland's Federal Tort Claims Act (FTCA)

---

[*]The Honorable Lyle E. Strom, United States District Judge for the District of Nebraska, sitting by designation.

negligent supervision claim against the United States, were jurisdictionally barred by 42 U.S.C. §§ 405(h) and 1395ii. The district court also dismissed Midland's claim against Mutual based on common-law official immunity. We affirm.

Like the district court, we take our statement of the facts from Midland's complaint, but we supplement the complaint with the district court's findings where the complaint is silent on jurisdictionally significant facts. Under contracts with two Kansas City area hospitals, Midland provided partial hospitalization services to nursing-home residents. Partial hospitalization is an intensive outpatient service covered under Part B of the Medicare Act. See 42 U.S.C. §§ 1395k(a)(2)(J), 1395x(ff) (1994). Part B claims are processed by Medicare carriers--chiefly insurance companies, see id. § 1395u(f)--under contract with and on behalf of the Department of Health and Human Services. See id. § 1395u(a). Midland billed the hospitals, and the hospitals in turn submitted Medicare claims for Midland's services to Mutual, a Medicare carrier.

Mutual denied thousands of the hospitals' Midland-related claims on the grounds that Midland's services were unsupervised by a physician and medically unnecessary. See id. §§ 1395x(ff)(1), (2). Midland contends Mutual denied the claims to put Midland out of business. According to the district court, the hospitals sought administrative review of Mutual's claims denials, see Midland Psychiatric Assocs., Inc. v. United States, 969 F. Supp. 543, 547-48 (W.D. Mo. 1997), but Midland was not a party to the hospitals' administrative appeal, see id. at 548. Midland maintained it was not eligible to join the appeal, and the district court did not find otherwise. See id. Unable to obtain payment through Medicare, the hospitals eventually dropped Midland's services, and several hospitals thinking of contracting with Midland decided against it. Midland then filed this lawsuit against Mutual and the United States, claiming Mutual had tortiously interfered with Midland's past and prospective hospital contracts and the Government had supervised Mutual negligently. The district court dismissed both claims for lack of subject matter jurisdiction. See id. at 554. We

review de novo whether the district court properly did so. See Clarinda Home Health v. Shalala, 100 F.3d 526, 528 (8th Cir. 1996).

Like the district court, we begin our analysis with the Missouri law governing Midland's diversity-based tortious interference with contract claim. Under that law, Midland would have to prove, among other elements, that Mutual interfered with Midland's hospital contracts without justification. See Rice v. Hodapp, 919 S.W.2d 240, 245 (Mo. 1996). Contrary to Midland's assertion, Midland would not be able to prove absence of justification solely with evidence Mutual wanted to put Midland out of business. Regardless of its intent, Mutual cannot be held liable for tortious interference if it had a right to deny the hospitals' claims. See id. The district court thus correctly concluded that hearing Midland's tortious interference claim against Mutual would mean reviewing the merits of Mutual's Medicare claims decisions. See Midland, 969 F. Supp. at 547.

The district court also concluded 42 U.S.C. § 405(h) deprived it of the power to conduct such a review. See id. at 547-50. Section 405(h) is a provision of the Social Security Act made applicable to the Medicare Act by 42 U.S.C. § 1395ii. As modified by § 1395ii for Medicare Act purposes, § 405(h) reads:

> The findings and decision of the [Secretary of Health and Human Services] after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the [Secretary] shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the [Secretary], or any officer or employee thereof shall be brought under section 1331 or 1346 of title 28 to recover on any claim arising under this subchapter.

The district court held § 405(h) barred Midland's tortious interference claim in two distinct ways. First, because Midland failed to exhaust administrative remedies, its claim was barred by sentence two of § 405(h). See Midland, 969 F. Supp. at 548.

Second, because Midland's claim fell within the scope of the jurisdictional bar imposed by § 405(h)'s third sentence, it was independently barred on that ground as well. See id. at 548-50. We believe the district court complicated matters somewhat by taking the administrative exhaustion requirement out of context and leaving undiscussed the interplay between § 405(h) and a related statute, 42 U.S.C. § 405(g).

As the district court noted, see Midland, 969 F. Supp. at 547-48, the Supreme Court has held the first two sentences of § 405(h) require exhaustion of administrative remedies. See Weinberger v. Salfi, 422 U.S. 749, 757 (1975). More precisely, the last four words of § 405(h)'s second sentence--"except as herein provided"--refer to the rest of 42 U.S.C. § 405, particularly § 405(g), see Illinois Council on Long Term Care Inc. v. Shalala, No. 97-2315, 1998 WL 228063, at *2 (7th Cir. May 8, 1998), and § 405(g), as adapted to the Medicare Act by 42 U.S.C. § 1395ff(b)(1), creates federal jurisdiction over final agency decisions in administrative Medicare appeals, see American Academy of Dermatology v. Department of Health & Human Servs., 118 F.3d 1495, 1497-98 (11th Cir. 1997). Finality, for purposes of § 405(g), has two components: a nonwaivable requirement that a claim be presented for administrative review, and a waivable requirement that all administrative remedies be fully pursued. See Heckler v. Ringer, 466 U.S. 602, 617 (1984) (citing Mathews v. Eldridge, 424 U.S. 319, 328 (1976)). After opening the door to judicial review of administratively exhausted Medicare claims decisions in this way, Congress otherwise denied judicial review of Medicare claims decisions in the third sentence of § 405(h). As the Supreme Court has said, sentence three of § 405(h) makes § 405(g) "the sole avenue for judicial review for all claims arising under the Medicare Act." Ringer, 466 U.S. at 614-15 (alteration and internal quotations omitted).

The burden of establishing that federal jurisdiction exists "rests upon the party asserting jurisdiction." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). To carry this burden on its tortious interference claim and overcome the jurisdictional hurdles erected by §§ 405(g) and (h), Midland had two options. It could

-4-

have contended its claim does not fall within the scope of § 405(h)'s third sentence. Alternatively, Midland could have argued that if its claim against Mutual was jurisdictionally barred by sentence three, jurisdiction nonetheless exists under § 405(g). Midland chose the first option only. Although Midland claimed it was not eligible to participate in the hospitals' administrative appeal--and on this record we cannot tell if that is so--Midland did not ask the district court, and does not ask us, to treat the hospitals' administrative appeal as satisfying the nonwaivable presentment requirement, and to waive full exhaustion because Midland lacked standing to carry forward the administrative appeal. See Bowen v. City of New York, 476 U.S. 467, 482 (1986) (excusing exhaustion in circumstances where imposing it would be unfair). Thus, we need not and do not decide whether the district court had jurisdiction over Midland's tortious interference claim based on § 405(g).

Midland argued below, and argues on appeal, that its claim does not fall within the scope of § 405(h)'s third sentence: "No action against the United States, the [Secretary], or any officer or employee thereof shall be brought under section 1331 or 1346 of title 28 to recover on any claim arising under this subchapter." To decide if Midland is correct, we must determine whether, as a matter of law, (1) Mutual is an officer or employee of the United States, (2) sentence three bars diversity-based claims as well as those brought under federal-question jurisdiction (§ 1331) or the jurisdictional statute for suits against the United States (§ 1346), and (3) Midland's tortious interference claim arises under the Medicare Act. We consider these issues in turn.

The district court first concluded that as a Medicare carrier, Mutual is an officer or employee of the United States. See Midland, 969 F. Supp. at 548. The district court relied on the Seventh Circuit's opinion in Bodimetric Health Servs., Inc. v. Aetna Life & Cas., 903 F.2d 480 (7th Cir. 1990). Bodimetric was a case much like ours, involving diversity-based tort claims brought by a health-care provider against a private insurer acting as a Medicare fiscal intermediary. ("Fiscal intermediaries" process Medicare

Part A claims. See 42 U.S.C. § 1395h(a) (1994).) The <u>Bodimetric</u> court held that in their role as fiscal intermediaries, private organizations serve as federal officers or employees. See 903 F.2d at 487-88. This conclusion holds good for Medicare carriers as well. Carriers are governmental agents. See <u>Bushman v. Seiler</u>, 755 F.2d 653, 655 (8th Cir. 1985). Under contract with the Secretary of Health and Human Services, they do the work of the Government on the Secretary's behalf. See 42 U.S.C. § 1395u(a); <u>Clarinda</u>, 100 F.3d at 528.

Second, the district court concluded that despite its literal wording, sentence three of § 405(h) bars claims based on diversity of citizenship under 28 U.S.C. § 1332, the jurisdictional basis of Midland's claim against Mutual. See <u>Midland</u>, 969 F. Supp. at 548-49. <u>Bodimetric</u> sheds light on this issue as well. See 903 F.2d at 488-90. As the Seventh Circuit explains, § 405(h) as originally enacted barred all claims brought under 28 U.S.C. § 41, an earlier jurisdictional statute that included the grant of diversity jurisdiction now contained in § 1332. See <u>id.</u> at 488. When Congress revised sentence three, it labeled the amendment a technical correction, and at the same time made clear that no substantive change in the law was intended. See <u>id.</u> at 489. The Seventh Circuit thus concluded that the current version of § 405(h) bars diversity actions just the same as the original version did. See <u>id.</u>

This conclusion is not in disagreement with our decision in <u>Rochester Methodist Hosp. v. Travelers Ins. Co.</u>, 728 F.2d 1006 (8th Cir. 1984). See <u>Bodimetric</u>, 903 F.2d at 489 n.8. We held in <u>Rochester Methodist</u> that sovereign immunity does not shield a Medicare fiscal intermediary from tort liability for conduct beyond its official authority. See 728 F.2d at 1008, 1015-16. Although the effect of our decision was to permit a diversity-based tort claim against a fiscal intermediary, we did not interpret or apply § 405(h). Now that we are called on to do so, we find the Seventh Circuit's analysis persuasive. We thus hold the jurisdictional bar imposed by sentence three of § 405(h) extends to claims based on diversity of citizenship.

Third, the district court concluded Midland's tortious interference claim arises under the Medicare Act. See Midland, 969 F. Supp. at 549-50. Again, we agree. A claim may arise under the Medicare Act even though, as pleaded, it also arises under some other law. See Salfi, 422 U.S. at 760-61 (interpreting § 405(h) in Social Security Act context). A claim does arise under the Medicare Act if it is "inextricably intertwined" with a Medicare benefits determination. Ringer, 466 U.S. at 614-16, 624; Clarinda, 100 F.3d at 529. That standard is met here. At bottom, Midland is claiming Mutual should have paid for its services. See Ringer, 466 U.S. at 614. As we have explained, hearing Midland's tortious interference claim would necessarily mean redeciding Mutual's Midland-related Medicare claims decisions. Summing up, then, because Mutual is an officer or employee of the Government when it acts as a Medicare carrier, because § 405(h) extends to diversity-based claims, and because Midland's tortious interference claim arises under the Medicare Act, Midland's claim against Mutual is jurisdictionally barred by sentence three of § 405(h).

We take up next the district court's last alternative basis for dismissing Midland's claim against Mutual: the federal common-law doctrine of official immunity. Under Westfall v. Erwin, 484 U.S. 292, 297-98 (1988), federal officials are absolutely immune from tort liability for discretionary conduct within the scope of their official duties. After Westfall was decided, Congress amended the FTCA, broadening the immunity enjoyed by federal employees by eliminating Westfall's discretionary conduct requirement. See Heuton v. Anderson, 75 F.3d 357, 359 (8th Cir. 1996). Under the amendments, known as the Westfall Act, see id., when a federal employee is sued in tort, the United States is substituted as the defendant if the Attorney General certifies that the conduct giving rise to the lawsuit was within the scope of the employee's office or employment, see 28 U.S.C. §§ 2679(d)(1), (2) (1994), unless the district court finds to the contrary, see Heuton, 75 F.3d at 360. Although Mutual, as a Medicare carrier, is a federal officer or employee, immunity under the Westfall Act amendments was unavailable in this case because the Government withdrew its request to be substituted for Mutual, and the Attorney General never provided the necessary certification. See

Midland, 969 F. Supp. at 551. As the district court notes, see id. at 552 n.6, had the United States been substituted for Mutual, Midland's claim would have been outside the scope of the FTCA. See 28 U.S.C. § 2680(h) (1994); Selland v. United States, 966 F.2d 346, 347 (8th Cir. 1992) (per curiam). The district court concluded, however, that Mutual was entitled to common-law official immunity under Westfall. See Midland, 969 F. Supp. at 552.

Despite the changes wrought by the Westfall Act, it is well established that Westfall still articulates the more restrictive federal common-law rule limiting official immunity to discretionary conduct. See Beebe v. Washington Metro. Area Transit Auth., 129 F.3d 1283, 1289 (D.C. Cir. 1997); Mangold v. Analytic Servs., Inc., 77 F.3d 1442, 1447 n.4 (4th Cir. 1996); see also Slotten v. Hoffman, 999 F.2d 333, 335-37 (8th Cir. 1993) (relying on Westfall after enactment of Westfall Act). Applying that rule here is a straightforward matter. First, we have held Medicare carriers are governmental agents for purposes of official immunity. See Bushman, 755 F.2d at 655. Second, Medicare claims decisions fall squarely within the scope of the carrier's official duties. Third, these decisions are not merely ministerial. Medicare carriers must exercise discretion to determine a number of matters, including whether services are covered and how much they should reasonably cost. See 42 C.F.R. §§ 405.803(a), (b) (1997). Here, for example, to decide the coverage question, Mutual had to determine whether Midland's services were "reasonable and necessary for the diagnosis and active treatment of the individual's condition." 42 U.S.C. § 1395x(ff)(2). So also, in making cost determinations carriers are to "exercise judgment" so that charges will be "realistic and equitable." 42 C.F.R. § 405.502(c) (1997). Medicare claims decisions plainly satisfy Westfall's discretionary conduct requirement.

Before we conclude our analysis, however, the Supreme Court directs us to consider whether providing immunity would potentially do more harm than good. See Westfall, 484 U.S. at 299. Having done so, we are persuaded "the contribution to effective government" made by a grant of immunity in this context outweighs "the

potential harm to individual citizens." Id. Individuals already have ample remedies under a comprehensive regulatory scheme that affords multiple opportunities to appeal a fiscal intermediary's or a carrier's denial of their claims. See 42 C.F.R. §§ 405.701-.753 (1997) (governing Medicare Part A appeals); id. §§ 405.801-.877 (governing Medicare Part B appeals). The administration of the Medicare program, on the other hand, could be hindered if we denied immunity here. Congress intended private organizations acting as carriers and fiscal intermediaries to play a significant role in the Medicare program, see Bodimetric, 903 F.2d at 487, and insurers like Mutual might well rethink their contracts with the Government if they had to make Medicare claims decisions under the threat of tort liability. Denying immunity in this case could "shackle 'the fearless, vigorous, and effective administration of policies of government.'" Westfall, 484 U.S. at 297 (quoting Barr v. Matteo, 360 U.S. 564, 571 (1959)). Thus, whether or not 42 U.S.C. § 405(h) bars Midland's tortious interference claim, we conclude Mutual enjoys common-law official immunity from that claim.

Finally, we turn briefly to the district court's dismissal of Midland's FTCA claim brought against the United States under 28 U.S.C. § 1346. According to Midland's complaint, the Government is liable to Midland for negligent supervision because it allowed Mutual to deny Medicare claims wrongfully. As the district court points out, "[t]he Government's liability is . . . derivative; it depends upon a showing that the entity the Government was supposed to supervise--Mutual--acted tortiously." Midland, 969 F. Supp. at 554. Thus, once again Mutual's benefits determinations are intertwined with Midland's claim, so the FTCA claim arises under the Medicare Act. See Ringer, 466 U.S. at 614-16, 624. Because sentence three of 42 U.S.C. § 405(h) precludes claims against the United States arising under the Medicare Act and jurisdictionally based on § 1346, the district court properly dismissed Midland's FTCA claim for lack of jurisdiction.

We affirm the district court's dismissal of Midland's claims for lack of subject matter jurisdiction.

A true copy.

Attest:

      CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.