USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 97-2290

 OPERATION RESCUE NATIONAL, ET AL.,

 Plaintiffs, Appellants,

 v.

 UNITED STATES OF AMERICA,

 Defendant, Appellee.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Mark L. Wolf, U.S. District Judge]

 Before

 Boudin, Circuit Judge,
 
 Aldrich and Cyr, Senior Circuit Judges.
 
 

 Paul F. Galvin with whom Randal C. Fritz was on brief for
appellants.
 John F. Daly with whom Mark B. Stern, Attorneys, Appellate
Staff, Stephen W. Preston, Deputy Assistant Attorney General,
Donald K. Stern, United States Attorney, and Frank W. Hunger,
Assistant Attorney General, were on brief for appellee.

July 1, 1998

 ALDRICH, Senior Circuit Judge. On November 15, 1993
 Senator Edward M. Kennedy, in Boston, following a campaign
 fund-raising luncheon, addressed a group of reporters in
 connection with a bill protecting access to clinics serving
 women's health, including abortions. The bill, of which he was
 the prime sponsor, was to be debated in the Senate the
 following day. In the course of his remarks, in answer to a
 question regarding this legislation, the Senator stated that
 organizations like Operation Rescue National ("Operation
 Rescue") had a "national policy [of] firebombing and even
 murder." Operation Rescue brought suit for defamation against
 the Senator in the Massachusetts Superior Court. Pursuant to
 28 U.S.C. 2679(d) of the Federal Tort Claims Act ("FTCA"), the
 United States Attorney filed therein a certification to the
 effect that Senator Kennedy "was acting within the scope of his
 employment as an officer and employee of the United States at
 the time of the conduct alleged in the complaint," and moved to
 remove the action to the United States District Court. The
 removal was effected and the district court thereupon granted
 the United States' motion for its substitution for Senator
 Kennedy as a defendant immunized by the FTCA. Because the FTCA
 excepts liability for defamation, see id. 2680(h), the court
 thereafter granted summary judgment for the United States,
 leaving Operation Rescue with no claim against either it or the
 Senator. See id. 2679(b)(1) (providing that an action
 against the United States is the exclusive remedy); United
 States v. Smith, 499 U.S. 160, 166-67 (1991) (holding that the
 exclusivity of remedy provision applies even if government
 liability is precluded).
 We affirm those actions, but, before proceeding
 further, we review the Westfall Act, so-called, the first step
 in producing this result, starting with the history leading to
 its enactment.
 One Erwin suffered injuries allegedly as a result of
 the negligence of Westfall and others, employees of the United
 States executive branch, in performing official acts the
 storage of dangerous chemicals. See Westfall v. Erwin, 484
 U.S. 292, 293-94 (1988). He brought suit against the
 individual defendants in the state court, but this action was
 removed to the district court pursuant to 28 U.S.C.
 1442(a)(1). This court held, by summary judgment, that
 defendants were absolutely immune because their conduct had
 been in the course of their government employment. The Court
 of Appeals reversed, holding that government employees were
 immune only for conduct of a discretionary character. It
 ordered the case remanded for a determination whether
 defendants' conduct was of that nature. On defendants'
 obtaining certiorari, the Court agreed with the Court of
 Appeals. Inter alia, it stated, "[O]fficial immunity comes at
 a great cost. . . . [A]bsolute immunity for federal officials
 is justified only when 'the contributions of immunity to
 effective government in particular contexts outweigh the
 perhaps recurring harm to individual citizens.'" Id. at 295-96
 (citation omitted). Without laying down standards, the Court
 affirmed. In so doing, it remarked that Congress was in the
 best position to rule on what was required for immunity. Seeid. at 300.
 This Congress promptly did by the Federal Employees
 Liability Reform and Tort Compensation Act of 1988, Pub. L. No.
 100-694, 102 Stat. 4563, the so-called Westfall Act. Beside
 removing the Westfall v. Erwin discretionary requirement, it
 increased the scope of the FTCA by adding employees of the
 judicial and legislative branches to those of the executive
 branch.
 In a comprehensive Memorandum, Operation Rescue
 National v. United States, 975 F. Supp. 92 (D. Mass. 1997), the
 district court, in addition to disposing of other matters no
 longer involved, considered the following issues: (1) Whether,
 as a result of the Westfall Act, the FTCA is to be read as
 including the members of Congress; and (2) Whether, if the FTCA
 does include Congressmen, its application to these facts is
 constitutional. We review its resolutions in the affirmative
 de novo, as rulings of law. See, e.g., Inmates of Suffolk
 County Jail v. Rouse, 129 F.3d 649, 653, 655 (1st Cir. 1997). 
 Beginning with the first, we agree with the district court's
 result, but approach it differently.
 Congressmen as Officers or Employees?
 At the time of Westfall v. Erwin, the list of
 government employees covered by the FTCA did not include those
 of the judicial and legislative branches:
 Definitions
 As used in this chapter and sections
 1346(b) and 2401(b) of this title, the term
 "Federal agency" includes the executive
 departments, the military departments . . . .
 
 "Employee of the government" includes
 officers or employees of any federal agency,
 members of the military . . . .
 
 The Westfall Act added the words "the judicial and legislative
 branches" to follow "the executive departments" in the first
 paragraph. It made no change in the second.
 In almost unlimited number, Operation Rescue has shown,
 from the Constitution and widespread federal statutes, uses of
 the phrase, "officers, members and employees," with "members"
 meaning members of Congress. From this it would have us
 conclude that when Congress said "officers or employees" here,
 it made a deliberate and meaningful omission. We quote its
 brief, pp. 7 and 14,
 Section 3 of the Westfall Act makes the
 FTCA applicable to "officers or employees" of
 the "legislative branch[]". A United States
 Senator is neither. Congress' historical
 practice, since its (sic) 1789, has been to
 reference the three classes of persons found
 in the halls of Congress as either "Member",
 "officer", or "employee". Congress chose
 defining, restrictive language, "officers or
 employees" of the "legislative branch[]", when
 it wrote its 1988 Westfall Act. So choosing,
 Congress identified a readily identified body
 of congressional personnel which does notinclude United States Senators.
 
 . . . .
 
 Of course the Members of the 100thCongress knew to whom they were referring when
 they wrote into the Westfall Act the
 restrictive language, "officers or employees"
 of the "legislative branch[]".
 In writing statutes, Congress chooses
 its words carefully . . . .
 
 (Emphases added).
 
 Aside from the final sentence, the rest is fiction. A
 voting Congressman who went beyond reading "FEDERAL EMPLOYEES
 LIABILITY" in the Westfall Act title would not find the
 claimed-to-be restrictive language even once. The Act's
 expressly declared purpose was to "protect Federal employees
 from personal liability for common law torts"; the phrase
 "Federal employee" occurred ten times, and the word "officer" and
 the phrase "officers and employees" never. See Westfall Act
 2, 102 Stat. 4563-64. How many astute legal minds who
 bothered to go further and read the FTCA, and saw there the
 phrase "officers or employees", would have thought of Operation
 Rescue's omission argument? We cannot think the Westfall
 Congress should be charged with plaintiff's connotation.
 Alternatively, Operation Rescue would say that, as a
 matter of law, Congressmen are neither "officers" nor "employees"
 of the federal government. The district court has compiled
 much detail rejecting this assertion that we need not repeat. 
 See, e.g., Lamar v. United States, 241 U.S. 103 (1916). 
 Operation Rescue, incomprehensibly, persists. 
 We add that even were this correct, circumstances speak
 louder than words. We ask a simple question Why would
 Congressmen vote to exclude themselves from a universal grant
 of immunity given to all others; to all employees below them;
 to all officers, up to the president, above them? The district
 court noted some, concededly weak, post-Westfall Act
 legislative history favoring inclusion of Congressmen. We
 think it more important to look to contemporary legislative
 history. Here we find nothing relevant. Like the famous dog
 that remained silent, the silence is telling. If the Westfall
 Act clearly and carefully intended to exclude Congressmen from
 the FTCA's otherwise universal benefits, would there not have
 been, at the least, some Congressmen who would have
 remonstrated?
 There is no such legislative history, or Operation
 Rescue's counsel would have found it. If, which we consider it
 does not, the strict language should be read as Operation
 Rescue would have it, this would be a clear case where contrary
 circumstances as a whole would surely prevail. Cf. Griffin v.
 Oceanic Contractors, Inc., 458 U.S. 564, 571-74 (1982).
 Failing here, Operation Rescue would supplement with
 constitutional claims. These have been well answered by the
 district court. We pass without comment the contention that
 "Congress does not have a general power to legislate," except to
 note McCulloch v. Maryland, 17 U.S. (4 Wheat.) 316, 406, 413
 (1819), and turn to Operation Rescue's main theme, that this is
 an immunity from which Congressmen are uniquely exempt. 
 Accordingly, Congress could grant immunity from defamation
 claims to other federal officers or employees, but it could not
 vote such benefits for itself. Further, the Speech or Debate
 Clause is a ceiling rather than a floor. For this last, the
 basic contention is, by its having given Congressmen some
 protection not given to others, the Constitution implicitly
 forbad any increase by statute, even when giving greater
 protection to others. This is singular logic. We need not
 repeat the district court's extensive rejections, with which we
 agree.
 In all respects the decision below is affirmed.