KAVANAUGH, Circuit Judge,
dissenting:
Their immigration status apparently unbeknownst to their employer, illegal immigrant workers voted in a union election and affected the election’s outcome. The employer later discovered that the workers were illegal; terminated them as required by federal immigration law; and sought to overturn the tainted union election. The NLRB ruled that the union election must stand because illegal immigrant workers are “employees” under the National Labor Relations Act and thus are entitled to vote in union elections. The majority opinion agrees.
I respectfully dissent. The result reached by the majority opinion not only is “somewhat peculiar,” as Judge Henderson acknowledges, but also is inconsistent with Supreme Court precedent and the Immigration Reform and Control Act of 1986. As the Supreme Court has explained, the term “employee” in the NLRA must be interpreted in conjunction with the immigration laws. See Sure-Tan, Inc. v. NLRB, 467 U.S. 883, 892-93, 104 S.Ct. 2803, 81 L.Ed.2d 732 (1984). Applying the Sure-Tan analysis, I would hold that an illegal immigrant worker is not an “employee” under the NLRA for the simple reason that, ever since 1986, an illegal immigrant worker is not a lawful “employee” in the United States. I would therefore vacate the Board’s order and remand for the Board to determine how a party can challenge a union election or certification upon discovering after the fact that illegal immigrant workers voted in the election and affected the outcome.
* * *
In 1984, the Supreme Court considered whether an employer committed an unfair labor practice by reporting illegal immigrant workers to immigration officials in response to the workers’ union activity. Sure-Tan, Inc. v. NLRB, 467 U.S. 883, 104 S.Ct. 2803, 81 L.Ed.2d 732 (1984). In an opinion by Justice O’Connor, the Court explained that the NLRA’s definition of “employee” must be interpreted in conjunction with the immigration laws. Id. at 892-93, 104 S.Ct. 2803. The Court then held that illegal immigrant workers were “employees” covered by the NLRA because — “[cjounterintuitive though it may be” — the immigration laws as they stood in 1981 did not prohibit employment of illegal immigrant workers. Id. at 892, 104 S.Ct. 2803. The Court stated:
For whatever reason, Congress has not adopted provisions in the INA making it unlawful for an employer to hire an alien who is present or working in the United States without appropriate authorization .... Moreover, Congress has not made it a separate criminal offense for an alien to accept employment after entering this country illegally. Since the employment relationship between an employer and an undocumented alien is hence not illegal under the INA, there is *11 no reason to conclude that application of the NLRA to employment practices affecting such aliens would necessarily conflict with the terms of the INA.
Id. at 892-93, 104 S.Ct. 2803 (emphasis added and citation omitted).
As I read the decision, the Court in Sure-Tan thus applied a straightforward analytical framework to govern the question whether illegal immigrant workers are “employees” under the NLRA. If federal law does not prohibit employment of illegal immigrant workers, then the workers can be “employees” under the NLRA. If on the other hand federal law prohibits employment of illegal immigrant workers, then the workers are not “employees” under the NLRA.[1]
When it decided Sure-Tan in 1984, the Court was well aware of the significance of tying the NLRA’s definition of “employee” to the immigration laws’ prohibition or non-prohibition on employment of illegal immigrant workers. The Court decided Sure-Tan in the midst of an intense congressional debate on immigration legislation. At oral argument in Sure-Tan, moreover, one of the Justices asked a direct question about proposed legislation banning employment of illegal immigrant workers. See Transcript of Oral Argument, Sure-Tan, 467 U.S. 883, 104 S.Ct. 2803 (No. 82-945), available at http://www. oyez.org/cases (Court: “There is legislation pending in Congress to make it illegal, to make it an unlawful act, a crime to hire an undocumented alien.”). And just five days before the Court issued its decision, the House of Representatives passed a bill to prohibit the employment of illegal immigrants. See 130 CoNG. Reo. 12,794-95 (June 20, 1984). It would defy credulity to suggest that the Supreme Court either was unaware of the significance of its discussion of immigration law or intended it to be meaningless.
Two years after Sure-Tan, as the Court had foreshadowed, Congress passed and President Reagan signed a comprehensive immigration bill that prohibited employment of illegal immigrant workers. The landmark Immigration Reform and Control Act of 1986, known as IRCA, “forcefully made combating the employment of illegal aliens central to the policy of immigration law.” Hoffman Plastic Compounds, Inc. v. NLRB, 535 U.S. 137, 147, 122 S.Ct. 1275, 152 L.Ed.2d 271 (2002) (internal quotation marks and alteration omitted). Under IRCA, it is now a criminal and civil violation for an employer to knowingly hire an illegal immigrant. Pub.L. No. 99-603, § 101, 100 Stat. 3359, 3360 (codified as amended at 8 U.S.C. § 1324a). If an employer hires a worker and later discovers that the worker is in the United States illegally, the employer must fire the worker immediately. 8 U.S.C. § 1324a(a)(2). And federal law provides that an employee may not use fraudulent identification documents in completing the immigration forms that are required to be employed in the United States. 8 U.S.C. § 1324c(a).
*12 IRCA “significantly changed” the “legal landscape” that had existed in Sure-Tan. Hoffman, 535 U.S. at 147, 122 S.Ct. 1275; see also Egbuna v. Time-Life Libraries, Inc., 153 F.3d 184, 188 (4th Cir.1998) (en banc) (IRCA brought about “monumental change” in immigration law). Applying the straightforward Sure-Tan analysis in the wake of IRCA, I would hold that an illegal immigrant worker is not an “employee” under the NLRA because Congress has now made it illegal for illegal immigrants to be employed.
The majority opinion and the Board rely on the result in Sure-Tan. See Maj. Op. at 2-3; Board Br. at 12-13. But Sure-Tan explained that the interpretation of “employee” depends on the status of the immigration laws. 467 U.S. at 892-93, 104 S.Ct. 2803. Congress then changed those immigration laws in 1986. When the Supreme Court has issued a statutory decision and Congress then acts to change the relevant law, it flouts congressional will for a lower court to ignore the new statute and rely reflexively on the result of the old Supreme Court case. Relying on Sure-Tan’ s pre-IRCA interpretation of “employee” is roughly like relying on District of Columbia v. Carter to dismiss a § 1983 suit against a D.C. police officer even though Congress later changed the statute to provide that such suits are cognizable under § 1983. Compare Carter, 409 U.S. 418, 432-33, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973), with Pub.L. No. 96-170, § 1, 93 Stat. 1284, 1284 (1979) (amending 42 U.S.C. § 1983). Or relying on Hubbard v. United States to hold that 18 U.S.C. § 1001 does not prohibit false statements in judicial proceedings even though Congress later changed the statute to provide otherwise. Compare Hubbard, 514 U.S. 695, 715, 115 S.Ct. 1754, 131 L.Ed.2d 779 (1995), with Pub.L. No. 104-292, § 2, 110 Stat. 3459, 3459 (amending 18 U.S.C. § 1001). Or relying on Westfall v. Erwin to limit federal employees’ immunity from suit even though Congress later passed the Westfall Act to ensure such immunity. Compare Westfall, 484 U.S. 292, 300, 108 S.Ct. 580, 98 L.Ed.2d 619 (1988), with Pub.L. No. 100-694, §§ 2, 5-6, 102 Stat. 4563, 4563-65 (amending 28 U.S.C. § 2679).[2]
Turning next to a logic textbook, the majority opinion contends that Sure-Tan is not as clear as it could have been on how the NLRA’s coverage of “employees” would be affected by a change in the immigration laws. See Maj. Op. at 6. But we nonetheless have to decide whether the better reading of Sure-Tan is that the NLRA’s coverage of illegal immigrant workers as “employees” (i) depends on whether illegal immigrant workers may be lawfully employed in the United States; or (ii) does not depend on whether illegal immigrant workers may be lawfully employed in the United States. In my judgment, the first reading — that the NLRA’s coverage of illegal immigrant workers as “employees” depends on whether illegal immigrant workers may be lawfully employed in the United States — is far and away the better interpretation of Sure-Tan. After all, under the majority opinion’s reading, Sure-Tan’s discussion of the interaction of the NLRA and the immigration laws would be entirely meaningless. See 467 U.S. at 892-93, 104 S.Ct. 2803. I *13 am reluctant to reach that conclusion about Supreme Court decisions; I am especially reluctant to do so here given that the Supreme Court was well aware of the significance of its opinion in light of the congressional proposals on illegal immigration then being considered and debated.
The majority opinion also refers to the plain language of the NLRA. See Maj. Op. at 2-3. But according to the Supreme Court, that’s only half the equation. The other half of the equation is the plain language of the immigration laws. Sure-Tan established that the NLRA’s definition of “employee” is not to be considered in isolation, but rather in conjunction with the immigration laws and whether those laws prohibit the employment of illegal immigrants. See 467 U.S. at 892-93, 104 S.Ct. 2803. Since 1986, federal law has contained just such a prohibition. The majority opinion would be correct if the Supreme Court in Sure-Tan had said something like “we interpret the NLRA’s definition of ‘employee’ without regard to a worker’s employment status under the immigration laws.” In fact, the Supreme Court said just the opposite.[3]
The majority opinion and the Board imply that Hoffman reaffirmed Sure-Tan. See Maj. Op. at 4, 7-8; Agri Processor Co., 347 N.L.R.B. No. 107, at 3 (2006); see also Concrete Form Walls, Inc., 346 N.L.R.B. No. 80, at 4 (2006). That is incorrect. The Hoffman Court did not hold that, after IRCA, illegal immigrant workers are still “employees” under the NLRA. Rather, the Hoffman Court stated that it was not addressing the “employee” issue. See 535 U.S. at 150 n. 4, 122 S.Ct. 1275 (“Our first holding in Sure-Tan is not at issue here .... ”); see also Brief of Petitioner at 17, Hoffman, 535 U.S. 137, 122 S.Ct. 1275 (No. 00-1595), 2001 WL 1729616 (raising remedial issues and not challenging whether illegal immigrant worker was an “employee” under the NLRA). If anything, the language of the Hoffman opinion is more consistent with a conclusion that illegal immigrant workers are not employees under the NLRA. After all, Hoffman made clear that, in the wake of IRCA, illegal immigrant workers are not entitled to any remedies under the NLRA, such as reinstatement or back pay, even when unfair labor practices are committed against them. 535 U.S. at 151-52, 122 S.Ct. 1275. The Hoffman Court explained that providing illegal immigrant workers with remedies under the NLRA “would unduly trench upon explicit statutory prohibitions critical to federal immigration policy, as expressed in IRCA.” Id. at 151, 122 S.Ct. 1275.
The majority opinion also relies on two House committee reports issued in connection with IRCA. See Maj. Op. at 4-5. The usual cautions apply to this kind of legislative history: Committee reports are highly manipulable, often unknown by most Members of Congress and by the President, and thus ordinarily unreliable as an expression of statutory “intent.” Committee reports are not passed by the House and Senate and presented to the President, as required by the Constitution in order to *14 become law. See U.S. Const. art. I, § 7; see also Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 568, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005) (“[judicial reliance on legislative materials like committee reports, which are not themselves subject to the requirements of Article I, may give unrepresentative committee members — or, worse yet, unelected staffers and lobbyists' — -both the power and the incentive to attempt strategic manipulations of legislative history to secure results they were unable to achieve through the statutory text.”). The two committee reports cited by the majority opinion here, moreover, are from “one House of a politically divided Congress” — the same category of legislative history that the Hoffman Court rejected. 535 U.S. at 149 n. 4, 122 S.Ct. 1275. Indeed, one of the reports cited by the majority opinion is the exact same report that the Hoffman Court dismissed as a “rather slender reed.” Id. at 149-50 n. 4, 122 S.Ct. 1275.
In considering the majority opinion’s legislative history argument, it bears emphasis that the Court in Sure-Tan had stated that the NLRA’s definition of “employee” depends on whether Congress prohibits employment of illegal immigrants. Given that analysis, Congress was necessarily aware that prohibiting employment of illegal immigrants could affect the NLRA’s coverage of illegal immigrant workers. Indeed, someone on Capitol Hill in 1986 knew that IRCA, analyzed in light of Sure-Tan, could remove illegal immigrant workers from the NLRA’s definition of “employee,” because one of the committee reports purports to say that IRCA would not affect Sure-Tan’s holding. The problem is that this committee report is “in no way anchored in the text” of IRCA, and we thus cannot rely on it. Shannon v. United States, 512 U.S. 573, 583, 114 S.Ct. 2419, 129 L.Ed.2d 459 (1994). As Justice Kennedy has explained for the Court, legislative materials can have a role in statutory interpretation “only to the extent they shed a reliable light on the enacting Legislature’s understanding of otherwise ambiguous terms.” Exxon Mobil Corp., 545 U.S. at 568, 125 S.Ct. 2611 (emphasis added). In a circumstance similar to this case, the Supreme Court flatly rejected a committee report that attempted to preserve a prior judicial precedent, stating that reliance on the report would have required the Court to “abandon altogether the text of the statute as a guide in the interpretative process.” Shannon, 512 U.S. at 583, 114 S.Ct. 2419. So too here. In light of Sure-Tan, if Congress in 1986 wished to say that illegal immigrant workers are prohibited from being employees in the United States but nonetheless are “employees” protected by the NLRA, it would have said so in the text of IRCA.
Contrary to the suggestion in the majority opinion, since IRCA only one other court of appeals has analyzed this issue in an opinion; it reached the same conclusion as the majority opinion here. See NLRB v. Kolkka, 170 F.3d 937 (9th Cir.1999); Maj. Op. at 5-6. But the Ninth Circuit’s decision did not grapple with the Supreme Court’s analysis in Sure-Tan and how IRCA applies under that analysis. I thus disagree with and would not follow the Ninth Circuit’s decision.
Applying Sure-Tan and Hoffman in the wake of IRCA, I would hold that an illegal immigrant worker is not an “employee” under the NLRA. I would vacate the Board’s order upholding the union election because the Board’s order rested on the incorrect conclusion that illegal immigrant workers are “employees” under the NLRA. This particular case involves a union election and thus does not affect or *15 involve the illegal immigrant workers themselves because they no longer work for the employer (the law prohibits their employment) and because the Supreme Court has already held that illegal immigrant workers are not entitled to any remedies under the NLRA. See Hoffman, 535 U.S. at 151-52, 122 S.Ct. 1275. But the question whether these illegal immigrant workers’ votes should count in the union election — the particular issue in this case — is still important to (i) the legal workers, whose votes may have been diluted or overridden in the union election by the votes of illegal immigrant workers, and (ii) the employer, who may have to bargain with a union that would not have been certified but for the votes of the illegal immigrant workers. I would remand for the Board to address how a party may challenge a union election or certification upon discovering after the fact that illegal immigrant workers voted in the election and affected the outcome.

. In Sure-Tan, Justice Powell and Justice Rehnquist dissented, arguing that even without a specific congressional prohibition against employing illegal immigrant workers, it is "unlikely that Congress intended the term 'employee' to include — for purposes of being accorded the benefits of that protective statute [the NLRA] — persons wanted by the United States for the violation of our criminal laws.” Sure-Tan, 467 U.S. at 913, 104 S.Ct. 2803 (Powell, J., concurring in part and dissenting in part). The Sure-Tan majority reasoned, however, that a congressional prohibition on employment of illegal immigrants was necessary in order to conclude that illegal immigrant workers were not "employees” under the NLRA. As a result of passage of the Immigration Reform and Control Act in 1986, of course, such a prohibition now exists.

. The doctrine of Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477, 484, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989), has no application in this case. That doctrine instructs lower courts not to assume that a Supreme Court decision implicitly overruled one of the Court’s prior precedents. In this case, however, we are not considering whether a Supreme Court decision implicitly overruled an earlier Supreme Court decision. Rather, we are considering the effect of a congressional change in the governing law.

. According to the majority opinion, we cannot read the NLRA's coverage of “employees” to be affected by the immigration laws because that would suggest that the immigration laws implicitly repealed the NLRA, which courts do not lightly find. See Maj. Op. at 4. With respect, the majority opinion’s discussion of the repeal-by-implication doctrine is a sideshow because the Supreme Court has already taken the step that the majority opinion here criticizes. In Sure-Tan, the Court explained that the immigration laws can affect the NLRA’s coverage of employees and that a prohibition on employment of illegal immigrant workers means they are not employees under the NLRA. See 467 U.S. at 892-93, 104 S.Ct. 2803.